UNITED STATES
v.
James J. LAUGHLIN.
Cr. Nos. 598–600.

United States District Court
District of Columbia.
Nov. 13, 1963.

Joseph A. Lowther, Asst. U. S. Atty., Washington, D. C., for plaintiff.

James J. Laughlin, Washington, D. C., pro se, and William J. Garber, Washington, D. C., for defendant.

CURRAN, District Judge.

The defendant in the above entitled cause was indicted by a Grand Jury for perjury (18 U.S.C. § 1621) on July 3, 1963. The case went to trial October 1, 1963 and on October 8, 1963 a mistrial was declared R.C., 222 F.Supp. 264, the jury discharged and the case was passed for trial. On October 30, 1963 the defendant filed motions to dismiss the indictments in Criminal Case Number 599–63 and Criminal Case Number 600–63, which were heard on November 1, 1963.

It is alleged in Criminal Case Number 599–63 that the defendant gave the following answers to the following questions before a duly constituted Grand Jury on March 6, 1963:

"Q. Do you even know Bernice Gross?

"A. No, I wouldn't say I know her if I saw her on the street. I heard her name because it came out during the trial. I would not know her if I met her on the street.

"Q. Have you ever talked to Bernice about this case?

"A. At no time.

"Q. Ever talked to her on the telephone at all?

"A. No."

The indictment also alleges twenty-six different dates prior to the above testimony before the Grand Jury on which the defendant allegedly talked to Bernice Gross on the telephone. The indictment also alleges that the Grand Jury was making an inquiry to determine whether, in connection with the case of United States v. Allan U. Forte, Criminal Number 741–61, there had been committed in the District of Columbia a conspiracy, influencing a witness, perjury, subornation of perjury, abortion and bribery. It was also alleged that it was material for this Grand Jury to ascertain the identity and actions of any person or persons who might have conspired to commit, or committed, the offense of endeavoring, corruptly, to influence a person being, or about to be, a witness at the proceedings preliminary to, and in the trial of Counts One and Two of United States v. Forte, supra, and the identity and actions of any person or persons who might have given or received or offered or been offered any money or other things of value for the purpose of corruptly influencing, intimidating or impeding any witness in the aforementioned case. It was also alleged that it was material for the Grand Jury to ascertain the relationship and any communications between one Bernice Gross, a witness under subpoena in the aforementioned case, and any of the persons who might have been engaged in influencing or attempting to influence witnesses, as mentioned above.

When the trial commenced the Government indicated that it would offer in evidence certain tape recordings of telephone communications between the defendant and Bernice Gross, two of which communications preceded the date of the defendant's testimony before the Grand Jury. United States District Judge Luther W. Youngdahl, in the absence of the Jury, heard testimony to determine: (1) Whether Bernice Gross had voluntarily given her consent to have the recordings made of her telephone calls with the defendant; (2) Whether, assuming consent on the part of Bernice Gross, the admission of such evidence would violate 47 U.S.C. § 605, any case law on the subject, or any provision of the Constitution of the United States.

The evidence disclosed that the recordings were made in the office of the United States Attorney in the United States Court House. They were made by means of an induction coil which was placed under an extension telephone while Mrs. Gross called the defendant on another telephone in the same room. The induction coil led to a tape recorder on which the conversations were recorded while they were being made. Judge Youngdahl

ruled, assuming a voluntary authorization on the part of Mrs. Gross, that the tapes would be admissible.

In a memorandum dated October 8, 1963, Judge Youngdahl said:

"As to the first point—Mrs. Gross's voluntary authorization to have the recordings made—the only testimony was that of Harold J. Sullivan, an assistant United States Attorney who had tried United States v. Allan U. Forte, supra, who had interrogated Mrs. Gross, the defendant, and others before the grand jury, and who supervised the making of the recordings. Mr. Sullivan testified that Mrs. Gross was agreeable to having the conversations taped. The Government did not put Mrs. Gross on the stand to establish the voluntariness of such authorization, and the defendant called no witnesses. In that state of the evidence, the Court concluded that the authorization had been voluntarily given, and after determining that the tapes were audible, see Monroe v. United States, 98 U.S. App.D.C. 228, 234 F.2d 49 (1956), permitted the tapes to be played before the jury."

The tapes were played during the direct examination of Mrs. Gross, who was called as a witness by the Government. On cross-examination she was asked whether she had voluntarily consented to having the recordings made, and she responded that she felt she had to cooperate. Judge Youngdahl then excused the jury and questioned Mrs. Gross on the issue of voluntariness. Mrs. Gross admitted to two Assistant United States Attorneys that she had perjured herself before the Grand Jury. She reappeared before the Grand Jury the same afternoon. Later that same day the first two telephone conversations were taped in the Office of the United States Attorney. At the time Judge Youngdahl ruled that Mrs. Gross' authorization had been voluntarily given and that the tapes therefore could be played before the jury, he had not read the exchange between Mr.

Sullivan, Mrs. Gross and the Deputy Foreman of the Grand Jury, which exchange preceded the making of the recorded telephone conversations.

47 U.S.C. § 605 "contemplates voluntary consent and not enforced agreement to publication." See Weiss v. United States, 308 U.S. 321, 330, 60 S.Ct. 269, 84 L.Ed. 298 (1939).

After Judge Youngdahl read the transcript of the exchange between Mr. Sullivan, Mrs. Gross and the Deputy Foreman of the Grand Jury, and had questioned Mrs. Gross as to the circumstances under which she made the telephone calls, he concluded that the Weiss case was dispositive of the issue in the present case and required the exclusion of the tapes on the ground that Mrs. Gross' consent was not voluntary. I agree.

Perjury cannot be proved by the uncorroborated testimony of one witness, since the falsity of one person's oath cannot be established by another person's oath alone. In other words, in a perjury prosecution the uncorroborated oath of one witness is not enough to establish, for purposes of conviction of perjury, the falsity of sworn testimony.

Before the Grand Jury the Assistant United States Attorney in charge of the presentation of the case made the statement that without Mrs. Gross' testimony "the whole thing falls apart," and then made the further statement "we need Mrs. Gross; without her we have got nothing, without her we have got nothing." Even if the Government were able to show by records of the Chesapeake and Potomac Telephone Company that there were phone calls between Mr. Laughlin's office and the United States Attorney's Office, this would be of no consequence for it would have no legal efficacy under the circumstances of this case, as it would be impossible to show who was carrying on the conversations. It follows, therefore, that the motion of the defendant Laughlin to dismiss in Criminal Case Number 599–63 must be and the same is hereby granted.

**626**

One further matter deserves comment. The Government's position is that the use of an induction coil is not an interception within the meaning of 47 U.S.C. § 605. However, a message is "intercepted" within the prohibition of the Federal Communications Act when anyone intercepts a message to whose intervention as a listener a communicant does not consent, irrespective of the means employed to accomplish the interception. The Statute does not mention physical interruptions of a circuit nor does it use the word "taps." The Statute refers only to "interceptions" and the means employed are of no consequence, for it is the breach of privacy that counts.

To interpret the Federal Communications Act as meaning that a third party who can record a whole conversation on a tape is not an interception does not, in my opinion, make sense for it is destructive of personal liberty. All this highly technical language to the effect that a mechanical device attached to a telephone constitutes an interception, and a mechanical device or an electronic device or an induction coil not directly attached to a telephone or a telephone line, but that is capable of recording a whole conversation between the parties, is not an "interception" is sheer nonsense. The Courts should meet the issue squarely and should not attempt to make technical distinctions between the mechanical methods used. What difference does it make whether a tapped wire records a conversation and an induction coil or other mechanical device does the same thing? To say that there is a difference is a sham and an illusion. Attempted distinctions designed to defeat the plain meaning of § 605 of the Federal Communications Act must not be countenanced. It follows, therefore, that where a conversation is recorded, regardless of the methods or the means used, without the consent of one of the parties, the right of privacy has been violated. I realize, of course, that the prohibition against "interceptions" of communications under § 605 of the Federal Communications Act sometimes hampers law enforcement officials in the detection and prosecution of certain crimes, especially when some of the criminal element choose to conduct their negotiations by means of a telephone. Any remedial legislation to cope with this situation rests with the Congress of the United States and, unless and until the Congress passes such legislation, the Courts are without power to act.

In Criminal Case Number 600–63, which is the conspiracy charge against Forte and Laughlin, the motion to dismiss is denied. The motions to impound the tape recordings are also denied. The motion for discovery has been temporarily withdrawn.