**In the Matter of the Conviction of James J. Laughlin, Appellant.**

**James J. LAUGHLIN, Appellant,**

**v.**

**UNITED STATES of America.**

Nos. 22996, 71–1142.

United States Court of Appeals, District of Columbia Circuit.

Argued June 12, 1972.

Decided Dec. 19, 1972.

Rehearing Denied March 1, 1973.

Certiorari Denied June 11, 1973.

See 93 S.Ct. 2784.

Inc., 189 NLRB No. 58, 1971 CCH NLRB ¶ 22,879 (1971) slip op. at 7–10.

Mr. James J. Laughlin, pro se.

Mr. James F. McMullin, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee in No. 71–1142. Mr. Oscar Altshuler, Asst. U. S. Atty., also entered an appearance for appellee in No. 71–1142.

Mr. Edmund L. Jones, Washington, D. C., with whom Messrs. Milton W. King and Preston C. King, Jr., Washington, D. C., were on the brief for appellee Committee on Admissions and Grievances for the United States District Court.

Before MacKINNON and WILKEY, Circuit Judges, and WILLIAM J. JAMESON,* Senior United States District Judge for the District of Montana.

PER CURIAM:

On appellant's motion we heard argument on these two cases together because they are both based on the appellant's long-continuing efforts to reverse his criminal convictions and resulting disbarment.

In No. 22,996 (the disbarment proceeding), Mr. Laughlin appeals from the December 20, 1969 order of the United States District Court for the District of Columbia disbarring him from the practice of law in the District of Columbia. His disbarment was based on final judgments of conviction entered in that court in two criminal cases: (1) on July 26, 1965 in Criminal No. 600–63, for conspiracy to obstruct justice and attempting to influence a witness in a criminal trial, and (2) on July 8, 1966 in Criminal No. 406–65, for perjury committed before the grand jury.

In No. 71–1142 (a *coram nobis* proceeding) Mr. Laughlin appeals from orders entered by the District Court on December 9, 1970 dismissing his complaint for collateral review of his two criminal convictions styled as a writ of error *coram nobis,* and on December 24, 1970 denying a motion for reconsideration of the foregoing that was based on an affidavit of personal bias by the trial judge against appellant. We affirm

---

* Sitting by designation pursuant to Title 28, U.S.C. Section 294(d).

each of the orders of the District Court from which appeals were taken.

### I. *No. 22,996—The Disbarment Proceeding*

In his brief on this appeal, appellant contends that the Committee on Admissions and Grievances is not bound by the judgments of conviction in the District Court for the criminal offenses, as affirmed by this court, but rather that the Committee can itself assess those judgments and reach an independent decision of their validity and thereby reinstate appellant to active practice. He cites no authority in support of this assertion; indeed he pursues it no further than to state it and move on to his attack on the merits of his convictions.

Nonetheless, the proposition is at least an arguable one, for the controlling statute at the time of his convictions was not mandatory in its language: [1]

When a member of the bar of the United States District Court for the District of Columbia is convicted of an offense involving moral turpitude, and a duly certified copy of the final judgment of the conviction is presented to the court, the name of the member so convicted *may* thereupon, by order of the court, be struck from the roll of the members of the bar, and he shall thereafter cease to be a member thereof.

However, at the time of his disbarment the statute had been amended to make its language mandatory. Section 199 of the District of Columbia Court Reform and Criminal Procedure Act of 1970 [2] amended D.C.Code § 11–2103 to cover the transition period between the date of its enactment, July 29, 1970, and April 1, 1972, when supervision of the local bar was shifted from the U.S. District Court to the District of Columbia Court of Appeals.[3] The amended statute, in effect on the date of appellant's disbarment, provides: [4]

If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted *shall* be struck from the roll of the members of the bar and he *shall* thereafter cease to be a member. *Upon the granting of a pardon* to a member so convicted, the court *may* vacate or modify the order of disbarment.

We need not decide, however, which of these statutes controlled the District Court's exercise of its supervisory powers over the local bar, nor whether appellant's construction of even the non-mandatory version is correct.[5] Appellant conceded at oral argument that this appeal rests wholly on our evaluation of the propriety of his criminal convictions, and that if we deny his appeal in the *coram nobis* proceeding, No. 71–1142, then this appeal, too, must fail. Since his convictions were for obstruction of justice and perjury, two offenses which belie the basic character qualification required of a lawyer, his concession recognized the reality of his situation. We

---

1. D.C.Code § 11–2103 (1967) (emphasis added).

2. July 29, 1970, Pub.L. 91–358, Title I, Part E, § 199(b)(1), 84 Stat. 597.

3. The new D.C.Code section covering disbarment from the D.C. Court of Appeals for criminal convictions is also mandatory in its terms. D.C.Code § 11–2503 (1967 ed., Supp. V 1972).

4. Pub.L. 91–358, § 199(b)(1), 84 Stat. 597, printed at note following D.C.Code § 11–2503 (1967 ed. Supp. IV 1971) (emphasis added).

5. In its literal terms appellant's argument cannot be correct because the Committee had no power to disbar or reinstate. Their function was simply to make investigations and recommendations to the District Court. It was solely the court which had the power to alter appellant's status as a member of the bar. The Committee could, however, arguably have lent its support and its substantial influence before the court on behalf of appellant if his construction of the statute were correct.

find no error either in his convictions or in the District Court's orders appealed from in No. 71–1142 and the order of the District Court disbarring appellant is therefore affirmed.

## II. *No. 71–1142—The Coram Nobis Proceeding*

### A. *Background*

In Criminal No. 741–61, United States v. Forte, appellant served as counsel for Forte who was being tried on charges of procuring and attempting to procure abortions for a Jean Smith.[6] The trial resulted in an acquittal of Forte on February 20, 1963.

During Forte's trial appellant and Forte alleged that the arresting officer, Samuel Wallace, had attempted to "shake-down" Forte, and they demanded a grand jury investigation of Wallace's alleged solicitation of bribery. During the course of the grand jury investigation subsequently held, one of the officers who had investigated the original abortion charges, Mrs. Bernice Gross, revealed the involvement of appellant and Forte in attempts to have her solicit false testimony from Mrs. Smith at Forte's trial. After these relevations, Mrs. Gross was pressured into making several recorded telephone conversations with appellant. When he was called to testify before the grand jury, however, appellant denied having ever known or spoken with Mrs. Gross:

"Q. Do you even know Bernice Gross?

"A. No, I wouldn't say I know her if I saw her on the street. I heard her name because it came out during the trial. I would not know her if I met her on the street.

"Q. Have you ever talked to Bernice about this case?

"A. At no time.

"Q. Ever talked to her on the telephone at all?

"A. No."

United States v. Laughlin, 222 F.Supp. 264 (D.D.C.1963). The grand jury returned two indictments against appellant. In Criminal No. 599–63 (the perjury indictment) he was charged with perjury for his grand jury testimony regarding his knowledge of Mrs. Gross. In Criminal No. 600–63 (the obstruction and conspiracy indictment) he was charged with conspiracy to obstruct justice and with influencing and attempting to influence a witness in a criminal trial with respect to his and Forte's and Mrs. Gross' attempts to obtain false testimony from Mrs. Smith in connection with Forte's trial.

No. 599–63, the perjury charge, came on for trial before Judge Youngdahl. After playing the tape recordings of the calls between Mrs. Gross and appellant in open court, cross-examination of her revealed that she had been coerced into making the recorded calls by threats of prosecution if she did not cooperate. Upon revelation of this information Judge Youngdahl ruled that the recordings were inadmissible and declared a mistrial. United States v. Laughlin, 222 F.Supp. 264 (D.D.C.1963).

Appellant then filed a motion to dismiss the indictments in both Nos. 599–63 and 600–63 because of the impropriety of the recorded telephone calls and the fact that they had all been played before the grand jury. On November 13, 1963 Judge Curran ruled on these motions, denying the motion regarding No. 600–63 (the conspiracy and obstruction indictment), but granting the motion to dismiss the indictment for perjury in No. 599–63. United States v. Laughlin, 223 F.Supp. 623 (D.D.C.1963). Judge Curran reasoned that without the

---

**6.** The indictment had included similar counts regarding a Dorothy Birge, but the counts were severed and appellant represented Forte only with respect to the charges involving Mrs. Smith.

recordings the Government in the perjury trial could present only the uncorroborated testimony of Mrs. Gross, and "[p]erjury cannot be proved by the uncorroborated testimony of one witness, since the falsity of one person's oath cannot be established by another person's oath alone." 223 F.Supp. at 625.

The Government requested reconsideration of this order arguing primarily that the telephone company records of the calls constituted sufficient corroboration of Mrs. Gross' testimony concerning the calls to warrant at least trial on the question rather than dismissal of the indictment. Judge Curran denied this request, finding that the bare telephone records established no more than that calls were made between two numbers, and such records did not provide sufficient corroboration of the identity of the persons who had been parties to those calls to meet the special independent corroboration test for a perjury conviction. United States v. Laughlin, 226 F.Supp. 112 (D.D.C.1964). An appeal from this decision was noted, but was subsequently dismissed on the Government's own motion.

In No. 600–63, the conspiracy and obstruction indictment, trial was had before Judge Hart. In this trial the tape recordings were admitted over appellant's objections, Judge Hart having ruled that Mrs. Gross' consent was freely given and not coerced. The resulting conviction was reversed by this court on appeal. Laughlin v. United States, 120 U.S.App.D.C. 93, 344 F.2d 187 (1965). We held that under the doctrine of collateral estoppel the issue of Mrs. Gross' consent and the admissibility of the recordings had been decided adversely to the Government by Judges Youngdahl and Curran in the earlier perjury trial and that it was reversible error to have admitted them in the trial on the conspiracy and obstruction charges.

On retrial of the conspiracy and obstruction charges before Judge Jones,[7] appellant was again convicted in No. 600–63. This conviction was affirmed on appeal in a long and carefully considered opinion authored by Judge Coffin of the First Circuit sitting by designation with a panel of this court. Laughlin v. United States, 128 U.S.App.D.C. 27, 385 F.2d 287 (1967). A petition for rehearing en banc was denied by the entire court, and the Supreme Court denied certiorari, 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968).

Following dismissal of the perjury indictment in No. 599–63, new proceedings were initiated before a different grand jury. Neither the tainted tape recordings nor the telephone company records were presented before this grand jury, yet a new perjury indictment was nonetheless returned in No. 406–65 on the basis of new independent evidence. Trial on this indictment before then District Judge Spottswood Robinson resulted in a conviction which was affirmed by this court. Petitions for rehearing en banc and for certiorari before the Supreme Court were denied. Laughlin v. United States, 128 U.S.App. D.C. 35, 385 F.2d 295 (1967), cert. denied, 390 U.S. 1003, 88 S.Ct. 1245, 20 L. Ed.2d 103 (1968).

Appellant subsequently filed Civil Action No. 1441–69, pursuant to 28 U.S.C. § 2255, collaterally attacking both his convictions in Nos. 600–63 and 406–65, and the substantiality of the direct review of those convictions in this court. This motion to vacate and set aside his two convictions and sentences was separated, and Judge Jones denied the request with regard to No. 600–63, and Judge Robinson (acting pursuant to 28 U.S.C. § 291(c)) denied it as to No. 406–65. The opinions of both Judges Jones and Robinson are set out in the

7. Appellant had filed an untimely affidavit of personal bias and prejudice against Judge Hart during the first trial, and the case was reassigned for the second trial.

appendix to the Government's brief on this appeal.

Both judges found that virtually all of the many contentions raised by appellant had been previously raised, argued, and decided at trial, on direct appeal, on the petition for rehearing, or at all three stages. Judge Robinson carefully examined the doctrine concerning collateral challenges under Section 2255 raising previously litigated issues and concluded

> that my function is not to reconsider those claims if, in the exercise of a sound discretion, I should conclude that "the ends of justice would not be served by reaching the merits of the [present] application."

Brief for appellee at 24 (citing Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) and quoting from Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). Applying this standard to the Section 2255 motion before him with regard to the perjury conviction, he held:

> In sum, all of petitioner's current contentions have received extensive attention, at both the trial and the appellate levels, save only the complaint as to appellate review, and the latter seems clearly unavailing. It bears repeating that petitioner has had the advantage of duplicate scrutiny, at both levels, of the points common to the perjury and conspiracy cases. Thus trial and appellate judges in some number have examined petitioner's current claims, and with complete unanimity have found them wanting. With the exhaustive consideration already given petitioner's arguments, and with the single exception hereinafter considered, I am unable to see how the ends of justice will be served by still another undertaking to reexamine their merits in the light of legal principles that have since remained unchanged.

Brief for appellee at 25 (footnotes omitted). That one exception was the applicability of decisions of the Supreme Court, rendered subsequent to the appeals in the perjury conviction, that arguably affected appellant's case. After examining this point, Judge Robinson rejected it too and denied appellant's Section 2255 motion.

### B. *The Present Appeal*

On August 20, 1970 appellant filed Civil Action No. 2503–70 attacking his convictions in a complaint styled as a writ of error *coram nobis*. Included in the complaint were allegations that Judge Jones had been improperly influenced by Judge Hart (whom appellant had previously charged with bias and personal prejudice against himself), so, with Judge Robinson now sitting on this court, the case was assigned to Judge Pratt rather than either of the trial judges as would have normally been the case.

The Government filed a motion to dismiss the complaint on October 15, 1970, and on December 9 Judge Pratt granted the motion as follows:

> Granted—assuming jurisdiction, the issues raised with one possible exception (appellate review) have all been raised in § 2255 motions decided by Jones, J. and S. Robinson, J. There must be an end to litigation and that point has been reached in these cases.

Appellant filed a motion for reconsideration of Judge Pratt's December 9 order, and for reassignment of the case to another judge. The motion for reassignment was based on appellant's attached "Affidavit of Bias and Prejudice." Both motions were denied by Judge Pratt on December 24, 1970 with the notation: "Denied—supporting affidavit a fabrication." This appeal from the December 9 and 24 orders followed.

### 1. *Jurisdiction.*

One ground alleged by the Government's motion for dismissal was that the District Court was without jurisdiction

to hear the case as a writ of error *coram nobis*. There is room for confusion on this point. Federal Rule of Civil Procedure 60(b) expressly abolished the writ of *coram nobis* in civil litigation in the federal courts, and the Reviser's Note to 28 U.S.C. § 2255 reported that: "This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis." [8] However, Section 2255 applies only to prisoners presently in federal custody and the Supreme Court, in essence, revived the writ in criminal cases in which federal custody had terminated by holding in United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), that Section 2255 did not wholly replace *coram nobis*.[9]

Since appellant is no longer held in actual custody under his sentences, the Government contended below that appellant's supervision under his parole board constitutes federal custody that makes Section 2255 rather than *coram nobis* the exclusive source of jurisdiction in the District Court. They urged a dismissal without prejudice to filing a new Section 2255 motion. In granting his dismissal on the merits, Judge Pratt "assum[ed] jurisdiction," presumably, though not expressly, by treating the papers as a Section 2255 motion. The Supreme Court in Kaufman v. United States, 394 U.S. 217, 230–231, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), adopted the broad rationale in support of collateral review expressed by Judge Wright's dissent in Thornton v. United States, 125 U.S.App.D.C. 114, 123, 368 F.2d 822, 831 (1966). Under such rationale and the Reviser's intent in drafting Section 2255 to make that Section a restatement of the *coram nobis* procedures, any fine, technical distinction between *coram nobis* and Section 2255 may properly be resolved by treating the two as substantially equivalent alternatives wherever, as here, this can be accomplished without contravening the express terms or doctrines of either procedure.[10]

### 2. *The standard of review.*

Treating the case as a Section 2255 motion, the standards governing repetitive 2255 actions prescribed in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and extensively discussed in Judge Robinson's opinion on appellant's prior 2255 motion, control our review of Judge Pratt's order:

Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

8. 28 U.S.C. note following § 2255.

9. *See* Owensby v. United States, 353 F.2d 412, 416–417 (10th Cir. 1965), cert. denied, 383 U.S. 962, 86 S.Ct. 1234, 16 L.Ed.2d 305 (1966); Thomas v. United States, 106 U.S.App.D.C. 234, 238, 271 F.2d 500, 504 (1959); Mathias v. United States, 246 F.Supp. 116, 118–119 (E.D.N.C.1965), rev'd on other grounds, 369 F.2d 43 (4th Cir. 1966).

10. Further support for considering Judge Pratt's assumption of jurisdiction as his having treated the papers as a Section 2255 motion comes from the nature of appellant's complaints. *Coram nobis* was available at common law only to correct errors of fact in very limited situations, United States v. Morgan, 346 U.S. 502, 507–11 (1954), and though the range of errors has been greatly broadened, the writ remains limited to the correction of factual errors. *See* 7 J. Moore, Federal Practice ¶ 60.14 (1971); 18 Am.Jur.2d, Coram Nobis §§ 1–3 (1965). The bulk of appellant's contentions here, however, relate to challenged conclusions of law— e. g. applicability of the doctrine of collateral estoppel, legality of the prosecutor's actions before the grand jury, propriety of jury instructions, etc.—that could not have been reached through *coram nobis*. Section 2255 does provide an avenue for such challenges.

\* \* \* \* \*

(3) Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair; we canvassed the criteria of a full and fair hearing recently in Townsend v. Sain, [372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770,] *supra,* and that discussion need not be repeated here. If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application. Two further points should be noted. *First,* the foregoing enumeration is not intended to be exhaustive; the test is "the ends of justice" and it cannot be too finely particularized. *Second,* the burden is on the applicant to show that, although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground.

373 U.S. at 15–17, 83 S.Ct. at 1077–1078 (footnotes omitted). Thus for any ground of relief that was presented in appellant's prior Section 2255 action and determined on the merits therein,[11] redetermination of that ground was dependent upon Judge Pratt's exercise of his sound discretion to find that the "ends of justice" would be served thereby. Accordingly, we can reverse his decision

on such grounds only upon finding an abuse of that discretion.

■ One of the points argued by appellant before this court was that Judge Pratt erred in failing to accord a hearing on this action. As set forth in note 11, *supra,* and the preceding paragraph, no hearing is required where the District Court finds either that the files and records of the case conclusively determine the issues raised, or that the grounds for relief have been previously determined on the merits and the "ends of justice" do not require redetermination. It is clear that Judge Pratt found both of these conditions satisfied and we hold that appellant has not carried his burden under *Sanders* of showing that that decision was in error. We conclude that no hearing was required in the circumstances of this case. Under *Sanders,* we need go no further, but we do so that we will consider all appellant's argument, even though repetitious, in the hope of reaching a *final* decision.

3. *Disposition of this appeal.*

■ Appellant's long, discursive, and frequently irrelevant briefs and memoranda present a serious challenge to careful, logical analysis. Yet even our most minute examination of the extensive materials filed in this case has failed to reveal a single point or issue that has not been argued, considered, and decided at some previous point—and generally in many such points—in appellant's litigation. The sole remaining question to be decided is whether Judge Pratt abused his discretion by not finding that the ends of justice required redetermination of any of these issues.

As for the factual issues presented here, appellant has wholly failed to demonstrate that he has been denied a full

11. The Court in *Sanders* noted that these rules are not operative in cases where the second or successive application is shown, on the basis of the application, files, and records of the case alone, conclusively to be without merit. . . . In such a case the application should be denied without a hearing.

373 U.S. at 15, 83 S.Ct. at 1077 (citation omitted). A denial without hearing based on a finding "that the files and records conclusively resolved these issues" constitutes a determination on the merits of such grounds. *Id.* at 16, 83 S.Ct. at 1077.

and fair hearing on these questions. In his prior Section 2255 action no hearing was accorded by either of the two trial judges because of their findings that the files and records of the case conclusively disclosed that appellant was entitled to no relief. Both judges dismissed as wholly frivolous appellant's contention that the direct appellate review of his convictions was in any way inadequate, and in the opinion reviewing the conspiracy conviction was an express finding that "the trial was conducted in an exemplary manner, with notable concern to protect the appellants' rights." 128 U.S.App.D.C. at 35, 385 F.2d at 295. We believe Judge Pratt properly concluded that no further review of any factual issues was necessary.

■ Only one of the legal questions raised by appellant here presents even an arguable claim for redetermination.[12] Appellant contends that Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), decided subsequently to all prior proceedings except Judge Robinson's Section 2255 opinion (and not mentioned therein), requires reconsideration of his collateral estoppel arguments. We find, however, that the issues decided in *Ashe* do not alter the principles of the collateral estoppel doctrine in any respect that would require reconsideration of the appellant's convictions.

■■ *Ashe* decided only (1) that the doctrine of collateral estoppel is embodied within the Fifth Amendment's double jeopardy protection, and (2) that in applying the doctrine to a criminal conviction rendered on a general verdict, the evidence and arguments at trial must be closely examined to determine what specific factual issues were contested and decided thereby, thus establishing the estoppel. Here, the estoppel appellant seeks to establish concerns issues which were expressly considered and ruled upon by Judge Curran in deciding appellant's motions to dismiss the indictments in Nos. 599–63 and 600–63. Thus there is no question of seeking to interpret a general verdict—the issues are clearly focused and were expressly decided in the proceedings before Judge Curran. 223 F.Supp. at 625–26. The other issue decided by *Ashe* is not relevant here at all.

■ We are left, then, with a simple issue concerning the application of the basic principle of collateral estoppel— "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe, supra,* 397 U.S. at 443, 90 S.Ct. at 1194. This was precisely the doctrine applied by this court in reversing appellant's first conspiracy conviction in No. 600–63, 120 U.S.App.D.C. at 95–98, 344 F.2d at 189–192, and in affirming his second conspiracy conviction, 128 U.S.App.D.C. at 33, 385 F.2d at 293. It is also precisely

---

12. The two other points most urgently argued in appellant's papers were squarely considered and rejected in prior proceedings, and appellant has raised neither new arguments nor intervening changes in the law to support reconsideration of them here. The contention that Judge Jones improperly denied a requested instruction on the defense theory of the case was expressly rejected on appeal. 128 U.S.App.D.C. at 34 & n. 4, 385 F.2d at 294 & n. 4. The contention that the Assistant U. S. Attorney's revelation of income tax information to a grand jury witness was illegal under Int.Rev.Code of 1954 § 7213 was expressly rejected in Judge Robinson's opinion denying Section 2255 relief. Brief for appellee at 20– 21 & n. 33. In any event, such use of income tax information is expressly authorized by Treas.Reg. § 301.6103(a)–1(h) (Cum.Pocket Supp.1967). The regulation authorizes personnel of the Internal Revenue Service to furnish income tax returns of individuals to United States Attorneys for official use in proceedings before a United States grand jury or in litigation in any court and for use in preparation for such proceedings or litigation if the United States is interested in the result. This is sufficiently broad to authorize disclosure of the contents of relevant income tax returns to juries and Government witnesses in such proceedings. The aforesaid regulation was added by T.D. 6543, 26 F.R. 563, Jan. 20, 1961.

the theory unsuccessfully urged by appellant at trial and on direct appeal from his perjury conviction in No. 406–65, and in his Section 2255 action with regard to all his convictions in both Nos. 600–63 and 406–65. *Ashe* has no effect whatsoever on this aspect of the doctrine and thus presents no intervening change in the law that would require redetermination of an issue that has already been so exhaustively examined in this litigation.

### III.

Having reached the foregoing conclusions we comment briefly on the points raised in appellant's current briefs which we have fully considered.

■ First, appellant contends that the Committee on Admissions and Grievances has the right to take issue with the judgments rendered in the criminal convictions if it is shown that they were entered in disregard of appellant's rights. The general rule is that a judgment of conviction in federal court for a felony is binding upon the District Court and the Circuit Court of Appeals and is not subject to collateral attack in a disbarment proceeding.[13] However, a collateral attack upon the judgments of conviction, of the type appellant postulates, is not involved here because we find that said judgments were not "entered in disregard of appellant's constitutional rights." Other aspects of the point are fully discussed and disposed of at pages 446–447, *supra*.

■ Second, appellant contends that the Government was collaterally estopped from offering the telephone company record cards of the alleged long distance telephone calls between Mrs. Gross' telephone and various Laughlin telephones because the same records were ruled inadmissible in the earlier perjury case, United States v. Laughlin,

226 F.Supp. 112 (D.D.C.1964). This exact point was raised in the earlier case, Laughlin v. United States, 128 U.S.App. D.C. 27, 33, 385 F.2d 287, 293 (1967) and we there pointed out the court in the perjury trial

held only that the telephone record cards did not constitute convincing corroboration. But that is not to say that they do not constitute permissible corroboration in a nonperjury case.

We see no reason to alter our prior decision.

■ Third, is a claim that the grand jury was biased "due to false information given the grand jury by the prosecutor." This claim is fully discussed and decided adversely to appellant at 128 U.S.App.D.C. at 31–32, 385 F.2d at 291–292. We there held that no general bias of the grand jury was shown to exist, that what is alleged as bias was basically a natural reaction by the jury to believing the evidence which incriminated appellant, and that since there was ample competent evidence before the grand jury to support the indictment he was not substantially prejudiced by any inadmissible evidence. We have reevaluated our prior holding and adhere thereto.

■ Fourth, appellant claims the indictment in the conspiracy and obstruction case should have been dismissed because the recordings of the telephone conversations were played for the grand jury and thus tainted the indictment. As we pointed out in our prior decision (128 U.S.App.D.C. at 31, 385 F.2d at 291), the indictment was presumptively valid, was supported by ample substantial evidence before the grand jury, was substantiated at trial by ample valid evidence and that appellant suffered no ultimate prejudice. We accordingly adhere to our prior decision on this point.

■ Fifth, appellant again argues that the trial court in the conspiracy

---

13. In re Tinkhoff, 101 F.2d 341 (7th Cir. 1938), cert. denied, 308 U.S. 552, 60 S.Ct. 99, 84 L.Ed. 464 (1939); In re Braverman, 148 F.Supp. 56 (D.Md.1957); *see also*, In re Teitelbaum, 13 Ill.2d 586, 150

N.E.2d 873, 875, cert. denied, 358 U.S. 881, 79 S.Ct. 121, 3 L.Ed.2d 111, reh. denied, 358 U.S. 923, 79 S.Ct. 287, 3 L.Ed. 2d 242 (1958); In re Welansky, 319 Mass. 205, 65 N.E.2d 202, 204 (1946).

and obstruction case committed reversible error when it allegedly refused to instruct the jury as to his theory of the case to the extent that it is supported by the evidence and the law,[14] but a claim that the jury should be instructed to acquit the defendant if the defense testimony denying guilt is believed can hardly be elevated to the status of a "theory." What is required before the theory of the case rule comes into play is a more involved theory involving "law" or fact, or both, that is not so obvious to any jury. This was the gist of our earlier holding on this point (128 U.S.App. D.C. at 34 n. 4, 385 F.2d at 294 n. 4),

and nothing has been added that convinces us we should change our decision.

Sixth, with respect to appellant's argument that the Government improperly disclosed some income tax information in connection with the grand jury proceeding, see our discussion of this point in note 12, *supra,* and particularly the federal regulation which permitted such use of the information in a case where the United States, as here, is interested in the result.[15]

Finally, we set forth the appendices from the August 8, 1969 opinion of Judge Jones in the conspiracy and obstruction case,[16] and the October 20,

14. It is reversible error for a trial court to refuse to instruct the jury on the defendant's theory of the case when properly requested by counsel and when the theory is supported by the evidence. Bird v. United States, 180 U.S. 356, 361–362, 21 S.Ct. 403, 45 L.Ed. 570 (1901).

Salley v. United States, 122 U.S.App.D.C. 359, 360, 353 F.2d 897, 898 (1965); Levine v. United States, 104 U.S.App. D.C. 281, 282, 261 F.2d 747, 748 (1958); Marson v. United States, 203 F.2d 904, 912 (6th Cir. 1953).

15. *See* note 12, *supra.*

16.

Civil Action No. 1441–69
Criminal No. 600–63

APPENDIX I

|  | Appellant's Brief | Reply Brief | Petition for Rehearing | Amicus Brief |
|---|---|---|---|---|
| 1. Unlawful Tape Recordings Were Played Before the Grand Jury | 23 | 4 | 13–15 | 3–23 |
| 2. Grand Jury Bias | 23–29 | 4 | — | 33–34 |
| 3. Violation of Criminal Statutes In The Procurement of Evidence | 33–35 | 7–11 | 7–15 | 6–23 |
| 4. Coercion of a Government Witness | 36–37 | 11–14 | 16–17 | 24–32 |
| 5. Fundamental fairness | 42–44 | 14 | — | — |
| 6. Failure to adhere to Department of Justice Directive | — | — | 7 | — |
| 7. Public Policy | 40–41 | 14 | — | — |
| 8. Collateral Estoppel (Receipt In Evidence of Telephone Records) | 19–22 | 3–4 | 16 | — |
| 9. No proof of conspiracy | 45–46 | 14–15 | — | — |
| 10. The Matter of other offenses (Reading paragraph 6 of Count 1 to the Jury) | 8–15 | 1–2 | 16 | — |
| 11. Failure to Instruct on Defendant's Theory of the Case | 47 | 17 | 4–6 | — |

1970 opinion of Judge Spottswood W. Robinson III in the perjury case,[17] specifying the prior instances when points raised in their respective cases had been previously raised.

## IV

For the reasons set forth above we are constrained to conclude that these appeals, as well as the *coram nobis* proceedings in the District Court, were wholly without merit. Appellant's indiscriminate and repetitive challenges to convictions that have already been exhaustively scrutinized for any indicia of impropriety border on an abuse of the judicial process but are understandable when one considers the vital effect of the convictions and disbarment upon appellant. As a result, he is deprived, late in life, of his ability to practice his profession. We appreciate fully the seriousness of the situation in which he has placed himself but we find no basis to justify our arriving at a different disposition of his case. While the ancient rule relied upon by Judge Pratt—"there must be an end to litigation"—surely must fall in cases where significant changes in the law or newly discovered facts or errors are revealed, such is not this case which raises no new facts, law, or arguments.

The orders of the District Court denying the writ of error *coram nobis* and denying reconsideration in No. 71–1142, and the order of disbarment in No. 22,996, are hereby

Affirmed.

17.

Civil Action No. 144–69

Criminal No. 406–65

## APPENDIX
### PRESENT POINTS RAISED ON PRIOR APPEAL

| | Appellant's Brief | Appellee's Brief | Reply Brief | Petition For Rehearing |
|---|---|---|---|---|
| 1. Governmental Eavesdropping | 12–15 22 | 18–21 | 1–7 14–15 | 5–11 |
| 2. Grand Jury Bias | 20–21 | 30–34 | 19–26 | 11–14 |
| 3. Violations in Procuring Evidence | 12–15 | 18–21 | 1–7 | 5–11 |
| 4. Coercion of Government Witness | 17–18 | 21–23 | 15–19 | 14–16 |
| 5. Fundamental Fairness | 15–17 | | | |
| 6. Department of Justice Directive | 12–15 | | 1–7 | 11–14 |
| 7. Public Policy | 15–17 | | | |
| 8. Collateral Estoppel | 19 | 23–29 | 12–13 | 1–2 14 |