SEARS, ROEBUCK AND CO.,
Plaintiff-Appellee,

Charles W. Dahm, O.P.,
Intervenor-Plaintiff-Appellant,

v.

Jack ECKERD et al.,
Defendants-Appellees.

No. 77–1417.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1977.

Decided April 25, 1978.

Rehearing Denied June 1, 1978.

John W. Conniff, Chicago, Ill., for intervenor-plaintiff-appellant.

S. Richard Pincus, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

In July 1976, Sears, Roebuck and Co. filed a verified complaint for declaratory judgment and injunction against the General Services Administration (GSA) and five federal officers.[1] Sears alleged that a portion of its business consists of contracts or subcontracts with federal agencies so that it complies with Executive Orders 11246 and 11375 [2] and the Regulations thereunder [3] requiring Government contractors to submit equal employment opportunity reports and other information to the Department of Labor's Office of Federal Contract Compliance (OFCC) and its Compliance Agencies. According to the complaint, the GSA is Sears' Compliance Agency. Sears has been required to submit GSA Standard Form 100–s (EEO–1's) and Affirmative Action Programs (AAP's) to the Government covering Sears' entire corporate domestic operations and each of its individual domestic establishments. Sears had also supplied other documents on a confidential basis to the Government to demonstrate its compliance with the applicable Executive Orders and Regulations.

Sears also alleged that in February 1973, the Secretary of Labor issued regulations providing that EEO–1's and AAP's will be disclosed (with exceptions) to requesting persons. In February and March 1976, the GSA informed Sears that under the Freedom of Information Act (5 U.S.C. § 552), Father Charles W. Dahm of the Dominican Order had requested copies of Sears' 1974 AAP's for its corporate headquarters in the Sears Tower in Chicago, Illinois, and that GSA intended to furnish this information to him. He had also asked for headquarters EEO–1's and supporting documents (App. 28).

According to this reverse Freedom of Information Act complaint, in June and July 1974, the GSA's Chicago Field Contract Compliance Office, pursuant to a complaint of Women Employed, undertook a compliance review of plaintiff's Sears Tower facility, and Sears tendered to the GSA investigator its 1973 and 1974 EEO–1 reports and other employment statistics (presumably already in other Government files) for its national headquarters and was assured by the investigator that the data would remain confidential. Consequently, in late March 1976, Sears filed objections to the proposed disclosure with the GSA, but those objections were overruled by the GSA's Director of Contract Compliance, causing Sears to appeal his decision to the Director of the OFCC. However, on June 24, 1976, the OFCC Director upheld the decision to disclose the data, stating that it would be released on July 8, 1976.

The complaint was filed six days before that deadline and charged that 18 U.S.C. § 1905 prohibits the disclosure of such confidential statistical data and that exemption (b)(3) of the Freedom of Information Act (5 U.S.C. § 552(b)(3), note 5 *infra*) therefore exempts the data from disclosure.[4] Consequently, Sears sought appropriate declaratory and injunctive relief. On July 2, Sears was granted a temporary restraining order

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The General Services Administrator; the Chicago Field Director of Contract Compliance of the General Services Administration; the Director of Contract Compliance of the General Services Administration; the Secretary of Labor; and the Director of the Office of Federal Contract Compliance Programs of the Department of Labor.

2. 30 C.F.R. 12319 and 14303 contain the Executive Orders.

3. 41 C.F.R. Part 60–2 *et seq.* are the regulations cited by Sears in Count One, par. 2 of its complaint.

4. The complaint also relied on Section 709(e) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–8(e)) as prohibiting disclosure of the data and on exemptions (b)(4), (6) and (7) in the Freedom of Information Act (5 U.S.C. § 552(b)(4), (6) and (7)). For purposes of this appeal, Sears does not rely on these provisions.

which was continued in effect until the hearing on its motion for a preliminary injunction.

After hearing five witnesses on August 6, 1976, the district court rendered oral findings of fact and conclusions of law in favor of Sears. Three weeks thereafter, the court handed down its formal findings of fact and conclusions of law and granted Sears a preliminary injunction. In its findings of fact, the court reiterated the principal contents of Sears' verified complaint and noted that on February 25, 1976, Sears had tendered Father Dahm "cumulative national and Chicago area statistical information concerning the racial and sexual composition of Sears' workingforce" but that Sears had declined to provide him with the requested Sears Tower headquarters data alone. The court also found that Sears classified the Sears Tower headquarters information as confidential.

The district court concluded that if this data were disclosed, Sears would suffer irreparable injury "both economically and in terms of its present and future public relations." The court noted that the defendants and Father Dahm would not be subjected to prejudice by the grant of a preliminary injunction because the data requested was out of date "and the national and Chicago area data voluntarily provided by Sears should be sufficient to assess Sears' equal employment commitment and progress."

Judge McGarr held that 18 U.S.C. § 1905 prohibits the GSA from disclosing such information and that there is a reasonable probability that Sears will eventually prevail on its claim that the information is exempt from disclosure under exemption (b)(3) of the Freedom of Information Act.

On December 7, 1976, Father Dahm was given leave to intervene as a plaintiff in this action. Thereafter he moved to dissolve the preliminary injunction, but his motion was denied on February 15, 1977, resulting in his taking this appeal. We vacate the order granting the preliminary injunction.

Sears seeks to justify the district court's order by contending that the (b)(3) exemption and 18 U.S.C. § 1905, taken together, forbid disclosure and provide a basis for an implied cause of action. We disagree with both contentions.

## I. *Is Disclosure Forbidden by Statute?*

Relying solely on the (b)(3) exemption in this Court,[5] Sears argues that the documents requested here are "specifically exempted from disclosure by statute" for purposes of that exemption because they consist of "confidential statistical data" forbidden from disclosure by 18 U.S.C. § 1905, a criminal statute restricting disclosure of confidential information by federal employees.[6] Section 1905 provides:

"Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent *not authorized by law* any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of

---

**5.** 5 U.S.C. § 552(b)(3) as amended in 1976 contains that exemption and provides:

"(b). This section does not apply to matters that are—

\* \* \* \* \* \*

"(3) specifically exempted from disclosure by statute (other than Section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on

the issue or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld."

**6.** Given our conclusion that the disclosure here is not covered by 18 U.S.C. § 1905, we need not decide the intervenor's claim that Section 1905 does not "specifically" exempt documents and therefore is not one of the statutes to which the (b)(3) exemption refers.

any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment." (Emphasis supplied.)

The federal defendants and the intervenor contend that the OFCC regulations [7] permitting the disclosure of these materials were clearly authorized under 5 U.S.C. § 301,[8] so that the projected disclosure is "authorized by law" and thus immunized from the prohibition of Section 1905. 5 U.S.C. § 301 provides:

"The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

■ Sears asserts that agency regulations valid under Section 301 do not constitute authorization by law for purposes of

Section 1905. We disagree. Like Judge Lay's opinion for the Eighth Circuit in *General Dynamics Corp. v. Marshall,* 572 F.2d 1211 (No. 77–1192, decided February 14, 1978), we follow the path charted by *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172, 1186–1188 (3d Cir. 1977), certiorari granted, —— U.S. ——, 98 S.Ct. 1466, 55 L.Ed.2d 504,[9] and hold that regulations valid under 5 U.S.C. § 301 satisfy the "authorized by law" exception of Section 1905.[10] Since validly promulgated regulations have the force of law (see *Public Utilities Commission of California v. United States,* 355 U.S. 534, 542–543, 78 S.Ct. 446, 2 L.Ed.2d 470; cf. *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403), they satisfy the authorization requirement of 18 U.S.C. § 1905. Cf. *Smith v. United States,* 305 F.2d 197, 201–202 (9th Cir. 1962), certiorari denied, 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124; *Laughlin v. United States,* 154 U.S.App. D.C. 196, 205, 474 F.2d 444, 453, n. 12 (1972), certiorari denied, 412 U.S. 941, 93 S.Ct. 2784, 37 L.Ed.2d 402. As the *Chrysler* opinion demonstrates, contrary to Sears' assertion and the opinion of the D.C. Circuit in *Charles River Park "A", Inc. v. Department of Housing and Urban Development,* 171 U.S.App.D.C. 286, 293–294, 519 F.2d 935, 942–943 (1975), such a holding is consistent with the legislative history of the 1958 amendment to Section 301 [11] (see 565 F.2d

---

**7.** The applicable regulations are contained in 41 C.F.R. Part 60–40 and generally permit the disclosure of EEO–1 reports and AAP's. Sears does not contend otherwise except for a passing reference to 29 C.F.R. § 70.21(a) (Br. 20–21) which prohibits any employee of the Department of Labor from disclosing certain records "in any manner or to any extent not authorized by law."

**8.** Because we find Section 301 to be sufficient authorization, we do not consider the other possible legal authorizations offered by the federal defendants and the intervenor: the FOIA itself and Executive Order 11246.

**9.** To the same effect, see Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit,* 55 Tex.L.Rev. 587, 624 (1977).

**10.** Neither party offered any legislative history specifically addressed to the meaning of the

phrase "authorized by law" in Section 1905 or in any of the three statutes that were consolidated in 1948 to form Section 1905. See Clement, *supra* note 9 at 607. However, that phrase has been construed broadly over the years by the courts (see, *e. g.,* Blair v. Oesterlein Company, 275 U.S. 220, 227, 48 S.Ct. 87, 72 L.Ed. 249; *United States v. Dickey,* 268 U.S. 378, 45 S.Ct. 526, 69 L.Ed. 1006; *Exchange National Bank v. Abramson,* 295 F.Supp. 87 (D.Minn.1969); cf. *Consumers Union v. Cost of Living Council,* 491 F.2d 1396 (Em.App.), certiorari denied *sub nom. Business Roundtable v. Consumer Union,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761), by the Attorney General (see 41 Op.Atty.Gen. 166, 169 (1953); 41 Op.Atty.Gen. 221 (1955)) and apparently by administrative agencies. See Clement, *supra* note 9 at 619 n. 136.

**11.** Taking out of context language in a 1958 Committee report, Sears argues that Section 301 was meant to apply only to documents "which are not restricted under other specific

at 1187); in fact if there were doubt about Congress' purpose in Section 301 it could be argued that the second sentence of that statute, added in the 1958 amendment, punctures Sears' position about agencies' inability to authorize disclosure.

The only argument about the interrelationship between Sections 301 and 1905 raised here that was not discussed fully in *Chrysler* is Sears' contention, supported by *Westinghouse Electric Corp. v. Schlesinger*, 542 F.2d 1190, 1215 (4th Cir. 1976), certiorari denied, 431 U.S. 924, that the holding in *Chrysler* would give Government officials "the unbridled freedom to redefine the scope of [their own] illegal conduct under Section 1905" (Supp. Br. 8) and leave submitters defenseless against disclosure. Therefore, Sears reasons, an independent statutory authorization should be necessary.

As a practical matter, however, Sears is not left defenseless against agency disclosure because affected persons can obtain review under the Administrative Procedure Act (5 U.S.C. § 701 *et seq.*). See 565 F.2d at 1190–1191. As a matter of interpreting whether Congress intended to allow agencies to define the bounds of legal conduct under Section 1905, we note two problems with Sears' position. First, Sears' argument that agencies would be allowed to redefine limits on their own conduct assumes without explanation or support the answer to the difficult and as yet unresolved question of whether Section 1905 was intended to restrict agency action as a whole in addition to individual employees of an agency. Obviously if the statute was aimed only at unwarranted actions by individual employees, allowing agencies using appropriate procedures to make clear what

action was warranted would not defeat Congress' purposes. The parties did not discuss this question and it has not received significant attention with the exception of a passing reference by Attorney General Brownell, who in advising agency heads in a criminal context wrote that it could not be assumed that the statute might not be applied to agencies as a whole. 41 Op.Atty. Gen. 221, 223 (1955). While this may have been good advice in the context of cautious avoidance of potential areas of criminal liability, we think such caution was unnecessary because the legislative history of at least one of the predecessors of Section 1905 reveals that those who expressed concern about disclosure (rather than just the investigatory powers involved in the predecessor legislation) seemed to focus their concern not on regulated official agency action but rather on unwarranted and uncontrollable action by "poorly paid revenue agents." 26 Cong.Rec. 6893 (1894) (remarks of Senator Aldrich). See generally Clement, *supra* note 9 at 610. Even if the legislative history were unclear, limiting the statute's focus to actions by agency employees seems more consistent with the statutory scheme because the enforcement mechanism of the statute provides only penalties for guilty individuals and offers no restraint on agency action.

Second, Sears' insistence on an independent statutory authorization would mean that each time Congress wanted to except an item or class of items from Section 1905 it would have to do so by statute in a manner with sufficient specificity to avoid agency discretion. Given that Section 1905 if read literally could embrace "virtually every category of business information like-

---

laws." (Supp. Br. 8; 1958 U.S.Code Cong. and Admin.News p. 3352 (House Report No. 1461)). This phrase seems inapplicable because it apparently was offered to make the House Report consistent with the phrase "not inconsistent with law" that appeared in the earlier, pre-amendment codification but significantly does not appear in 5 U.S.C. § 301. The explanatory notes to the new Section suggest that the phrase was omitted "as surplusage" because "a regulation which is inconsistent with law is invalid." It therefore appears from the history

and language of Section 301 that the Section was intended to impose no independent limit on the agencies' authority and that the determinative question, discussed *infra*, is whether agency authority to disclose is inconsistent with Section 1905 and thereby inconsistent with law. As a result we need not reach the question whether, assuming Section 301 itself placed an independent limit on what information could be disclosed, that limit would cover the regulations at issue here.

ly to be in the files of any federal agency" (565 F.2d at 1186), and that Congress in the FOIA has adopted a basic policy of disclosure (*Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11), certainly if a statute such as Section 1905 were passed today it would be unreasonable to infer a requirement of independent statutory authorization because of the tedious and difficult job that such a requirement would force Congress to undertake. Cf. *Federal Aviation Administration v. Robertson,* 422 U.S. 255, 265–266, 95 S.Ct. 2140, 45 L.Ed.2d 164. Particularly in light of the precedent in 1948 for agency regulations limiting Section 1905 (see Clement, *supra* note 9 at 619 n. 136) and Congress' apparent desire not to alter the substantive scope of Section 1905 (see Clement, *supra* note 9 at 618), we similarly decline to impart to the 1948 Congress an intention to require an independent authorization for exempting any item from the broad confines of Section 1905. Thus Sears offers no persuasive reason for deviating from the holding in *Chrysler* that disclosure of the information requested here is not forbidden by Section 1905.

## II. Does the Submitter of Information Have a Cause of Action?

 Even if Section 1905 did forbid disclosure, we agree with the *Chrysler* opinion that neither Section 1905 nor the FOIA itself permits this cause of action. See 565 F.2d at 1185, 1188. As *Chrysler* held, the proper avenue to secure judicial review is through the Administrative Procedure Act, using 28 U.S.C. § 1331 or § 1337 as a basis for jurisdiction.[12] See 565 F.2d at 1191–1192; see also Clement, *supra* note 9 at 626–633. Defendant federal officials agree that APA review is appropriate, but Sears seeks review under Section 1905 or the FOIA because the APA would not allow *de novo* review. See 565 F.2d at 1191; 5 U.S.C. § 706(2)(A).

Applying the four tests established in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26,[13] to determine whether a civil remedy is available first under Section 1905 indicates that on balance Section 1905 should not be interpreted to imply a private cause of action. Beginning with the second of the *Cort* tests, Sears points to nothing in the legislative history indicating an intent to create such a remedy;[14] the only apparent relevant item of history is that at least as to one of Section 1905's predecessors it was at one time argued that the criminal penalty provision was "valueless," but no attempt was made to compensate with a civil action. See Clement, *supra* note 9 at 611 n. 102. Thus if any inference can be drawn from the legislative history it is that Congress did not think a civil action was appropriate. As to the third test, we agree with Judge Gibbons in *Chrysler* that implying a civil action would not be consistent with the purpose of the statute, especially since the APA already provides a remedy. See 565 F.2d at 1188.[15]

**12.** The Administrative Procedure Act does not itself confer jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192; see Clement, *supra* note 9 at 627–628.

**13.** *J. I. Case v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, is inapplicable because under the statutory scheme there the courts were expressly granted a broad authority to enforce any liability or duty created by the Securities Exchange Act of 1934. See Clement, *supra* note 9, at 624–625 n. 170. Further, in *Borak* "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26.

**14.** Because neither party offered any item of legislative history bearing on intent, each argued that the burden of proof on this test was on the other party. Our view is that if there is no evidence on intent, neither party can claim the benefit of that test and the test simply offers no insight into whether a cause of action should be implied. In the final analysis it seems fair to infer from the manner in which the Supreme Court established the tests that plaintiff must prevail on at least one test in order to justify a cause of action (see note 16 *infra*); thus the failure of proof may be of more detriment to the plaintiff.

**15.** Sears insists that it would be consistent with the purposes of Section 1905 to imply a cause of action because the criminal penalties are inadequate. Its claim of inadequacy is based on the "plethora" of reverse FOIA suits, which it asserts proves that the Government has ignored Section 1905, and the lack of criminal

The remaining tests are not so unfavorable to the plaintiff. Because the civil action sought would involve enjoining federal agencies, it of course is not an action traditionally relegated to state law and thus no federalism interest would be affected if a cause of action were implied. Turning to the first *Cort* test, the history of at least one of Section 1905's predecessor statute does indicate that one of its motivations may have been an effort to protect the privacy of taxpayers who submitted information to the Government. See Clement, *supra* note 9 at 608, 610. Even assuming that all submitters of information are therefore "one of the class for whose especial benefit the statute was enacted" (422 U.S. at 78, 95 S.Ct. at 2088), we would hold that on balance it is not appropriate to imply a cause of action based on the weight that the Supreme Court appears to give to the third factor of whether the requested cause of action is necessary to ensure the fulfillment of Congress' purposes. See *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 51 L.Ed.2d 480.[16]

■ Judge Gibbons' opinion in *Chrysler* clearly demonstrates why an implied cause of action under the FOIA would not satisfy the second and third prongs of the *Cort* test. 565 F.2d at 1185–1186. As to the remainder of the test, our analysis of the proposed cause of action under Section 1905 is applicable to the FOIA claim as well, except that under the FOIA Sears' claim to be one of the especial beneficiaries of the statute seems considerably weaker. Without denying that the FOIA reflects some degree of Congressional concern about disclosing private information (see 565 F.2d at 1184), it is clear that the primary beneficiaries of the Act are the requesters. See *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11. Whether or not submitters therefore should be lumped with indirect and secondary beneficiaries of other statutes (see *Cort v. Ash*, 422 U.S. at 81, 95 S.Ct. 2080), their claim as especial beneficiaries is undercut since only requesters have been given a cause of action by the Congress. 5 U.S.C. § 552(a)(4)(B). Thus the claim of a cause of action under the FOIA is even weaker than the claim under Section 1905 and must be rejected similarly. See 565 F.2d at 1191–1192; see also Clement, *supra* note 9 at 626–633.

prosecutions under the Section. However, these facts do not necessarily prove that the penalties are inadequate to deter what Section 1905 was meant to deter but more likely prove that Sears' substantive interpretation of the Section has not been accepted. What Sears seems to be concerned about is not finding a better sanction to avoid the disclosure that the statute is interpreted to prohibit but rather another opportunity to litigate what information is included within the statute's protections.

16. Although the Supreme Court has not indicated the relative weight to be given to the four tests and that issue, despite its potential significance, has received little attention (cf. *Rauch v. United Instruments, Inc.*, 548 F.2d 452, 460 (3d Cir. 1976)), an analysis of those tests and the cases applying them indicates that proof by the plaintiff that it satisfies the first test is generally insufficient to justify implying a cause of action. See *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 455 (9th Cir. 1977); Note, *Implying Private Causes of Action from Federal Statutes:* Amtrak *and* Cort *Apply the Brakes*, 17 B.C.Ind.L.Rev. 53, 58 n. 126. Without mandating its application in an extreme case, this result seems sensible because the first test, whether plaintiff is in the benefit-

ed class, seems in large part a method of inferring the legislative intent and purposes addressed in the second and third tests. If the latter tests indicate that implying a cause of action is inappropriate, it is likely that the inference produced by the first test has been rebutted.

While not denying its potential significance, we also do not find compelling the fact that the cause of action is not one traditionally relegated to state law. When this factor is not present it merely indicates that no federalism interest would be affected if a cause of action were implied; it does not add any positive encouragement for the creation of a cause of action. Even those cases finding this factor present have questioned its significance under certain circumstances. See *e. g.*, *Kipperman v. Academy Life Ins.*, 554 F.2d 377, 380 (9th Cir. 1977). Moreover, although the prime focus of this concern is federalism, it should be noted that to the extent this inquiry may be in part concerned with whether the plaintiff will have any remedy if one is not implied (cf. *Mason v. Belieu*, 177 U.S.App.D.C. 68, 74, 543 F.2d 215, 221 (1976)), that concern is satisfied here.

Since Sears has posited its case upon 18 U.S.C. § 1905, and since that statute would not warrant the grant of the relief sought, the complaint must be dismissed. There is no need for a further hearing because the present record supports the projected disclosure. See App. 2–10. The purpose of the Freedom of Information Act was to foster "the fullest responsible disclosure." S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965). Plaintiff has not persuaded us or the officials in charge that this disclosure would be irresponsible. Accordingly, the order granting the preliminary injunction is vacated and the cause is remanded to the district court with directions to dismiss the complaint.