In the Matter of the Complaint against **Robert McKinley WILLIAMS, a Member of the Bar of the United States District Court for the District of Columbia.**

Misc. No. 4–57.

United States District Court
District of Columbia.

Dec. 23, 1957.

Edmund L. Jones, Francis W. Hill and Roger Robb, of Court's Committee on Admissions and Grievances, Washington, D. C., for defendant.

Henry Lincoln Johnson, Jr., Washington, D. C., for respondent.

Before TAMM, KIRKLAND and McGARRAGHY.

PER CURIAM.

By order dated June 25, 1957, this Court ordered the disbarment of the respondent, Robert McKinley Williams.

On the same date, the Court found, as a matter of fact, that the respondent, on the thirtieth day of November, 1956, in this Court had entered a plea of guilty to the offense of forgery and was sentenced to imprisonment for a period of some one to three years, the execution of the sentence being suspended and the defendant placed on probation.

The respondent thereafter filed a motion for stay of judgment and for modification of the judgment, which motion was denied. Thereafter, the respondent filed notice of appeal to the United States Court of Appeals for the District of Columbia, and while this appeal is pending, has filed a "Motion to Mitigate Punishment." The Court has held a hearing upon the motion to mitigate punishment.

Some doubt has been raised by representatives of the Court's committee on admissions and grievances whether the Court has jurisdiction to entertain the motion to mitigate punishment while the matter is pending before the Court of Appeals, but this doubt is resolved in favor of the respondent in order that this Court may, at this time, pass upon this motion.

The respondent asks by his motion that the Court rescind its order of disbarment and thereby reduce the punishment inflicted upon him.

The Court is of the opinion that the integrity of its Bar is the very foundation of the Court's ability to promote the administration of justice. Chief Justice Charles Evans Hughes has characterized the profession of the law as:

" * * * the privileged administration of a public trust affording the necessary means by which private and public rights are vindicated, private and public wrongs are redressed, and the very basis of civilization is made secure."

The Court must of necessity, in its dealings with the attorneys who are the officers of the Court, recognize varying degrees of professional skill and professional experience. The Court does not

feel, however, that it can recognize varying degrees of integrity. The Court feels that when one of its officers charged with the "privileged administration of a public trust" violates that trust, violates his professional and other responsibilities, and commits a felony involving a client's funds, he conclusively and finally destroys the bond of confidence which must exist between a court and himself. The Court does not believe that it could ever repose in the respondent the confidence which the Court must feel in its officers if the Court is to function honorably, efficiently and effectively. If an attorney's honesty has been successfully impugned, the Court feels that he should no longer be permitted to practice before it. Mr. Justice Miller of the United States Court of Appeals for the District of Columbia, in 1939, stated:

"If those not properly trained or those who are morally disqualified are permitted to practice before the courts, the administration of justice will suffer. 'It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean.' Hatfield v. King, 184 U.S. 162, 168, 22 S.Ct. 477, 479, 46 L.Ed. 481. Moreover, 'Our trouble is not simply in keeping the pestilence out of the temple, but in destroying it inside.'" Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676, 681.

■ The Court must be stern in demanding the highest standards of character and morality from its attorneys.

"Where an attorney was convicted of theft, and the crime was condoned by burning in the hand, he was nevertheless struck from the roll. 'The question is,' said Lord Mansfield, 'whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion.'" Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 576, 27 L.Ed. 552.

" * * * It is only for that moral delinquency which consists in a want of integrity and trustworthiness, and renders him an unsafe person to manage the legal business of others, that the courts can interfere and summon him before them. He is disbarred in such case for the protection both of the court and of the public.

"A conviction of a felony or a misdemeanor involving moral turpitude implies the absence of qualities which fit one for an office of trust, where the rights and property of others are concerned." See Justice Field's dissent in Ex parte Wall, supra.

■ The Court believes that in the best interests of the Court and the community, it must deny the defendant's motion for mitigation of punishment.