**In the Matter of Elaine W. KERR.**

**No. M–37–80.**

District of Columbia Court of Appeals.

Argued en banc Sept. 12, 1979.

Decided Nov. 17, 1980.

active practice as a member of the bar of this court. Petitioner Elaine W. Kerr's disbarment arose from her conviction in the United States District Court for the District of Columbia of mail fraud, 18 U.S.C. § 1341 (1970), an offense involving moral turpitude. Consistent with our decision in *In re Colson*, D.C.App., 412 A.2d 1160 (1979) (en banc), we adhere to the statutory mandate of D.C.Code 1973, § 11–2503(a). That statute initially requires disbarment of an attorney who has been convicted of an offense involving moral turpitude. We view the statute as precluding reinstatement, and conclude that the petition for reinstatement must be denied. The recommendation that the petitioner be conditionally reinstated accordingly is not adopted.[1]

Ralph H. Dwan, Jr., Washington, D.C., for Elaine W. Kerr.

Fred Grabowsky, Bar Counsel, for the Board on Professional Responsibility, Washington, D.C. (of the District of Columbia Court of Appeals).

Bernard I. Nordlinger, Washington, D.C., with whom Michael R. McAdoo, Bethesda, Md., was on the brief, as amicus curiae appointed by the Court.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

HARRIS, Associate Judge:

This matter is before the court for our consideration of the "Findings and Recommendations of The Disciplinary Board" with respect to a petition for reinstatement to

I

In a ten-count indictment filed on June 23, 1970, Kerr and a codefendant were charged with fraud by mail and wire, 18 U.S.C. §§ 1341, 1343 (1970), interstate transportation of stolen property, 18 U.S.C. § 2314 (1970), forgery and uttering, D.C. Code 1973, § 22–1401, and larceny after trust, *id.*, § 22–2203. Petitioner is an attorney who then was licensed to practice in Maryland, Virginia, and the District of Columbia.[2] She was charged in essence with involvement in a scheme to defraud two persons—one, a client; the other, someone for whom she had acted as trustee—in connection with a real estate investment scheme operated by her codefendant.[3] On September 10, 1971, she entered an *Alford* plea to count one of the indictment which alleged fraud by mail and wire.[4] She was sentenced to two years' imprisonment, with

1. The Board recommended that the petitioner be reinstated upon her showing that she had successfully completed a course in legal ethics and responsibility given by an accredited law school or a recognized continuing legal education program.

2. Petitioner attended law school in Maryland, and was admitted to the bar in that state in 1958. She subsequently was admitted on motion to the bar of the United States District Court for the District of Columbia in 1960, to the Virginia bar in 1961, and to the bar of this court in 1972.

3. He, too, was a client of sorts. She represented one of his corporations in the District of Columbia; apparently it was not the corporation that held title to the Virginia real estate implicated in the fraudulent investment scheme.

4. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

a minimum of six months to be served.[5] Execution of the sentence was suspended for 30 days to give petitioner the opportunity to make restitution.[6] Meanwhile, the trial court denied petitioner's motion to withdraw her guilty plea. The United States Court of Appeals for the District of Columbia Circuit affirmed the trial court's ruling. In 1973, the Supreme Court denied her petition for a writ of certiorari.[7]

As a result of her conviction, petitioner was disbarred seriatim in each jurisdiction in which she had been admitted to practice. She was disbarred by the Circuit Court of Fairfax County, Virginia, on November 9, 1971; by the United States District Court for the District of Columbia on February 5, 1974 (following a suspension order of September 27, 1972); by the Court of Appeals of Maryland on October 25, 1974; and by this court on May 18, 1977, by order effective *nunc pro tunc* to November 22, 1972, the date of her suspension under D.C.App. R.XI, § 15(1).[8]

On March 9, 1978, petitioner applied to this court for reinstatement.[9] In the proceedings which followed, she expressed her intent to relocate to the District of Colum-

bia from Falls Church, Virginia, and to seek employment here.[10]

In her testimony before the hearing committee which was designated by The Disciplinary Board to consider her petition for reinstatement, petitioner presented a picture of rehabilitation. Subsequent to her conviction, she had received graduate degrees in psychology. At the time she filed her petition, she was enrolled in a post-doctoral residency program in clinical psychology at the Maryland State Mental Hospital. Her doctoral dissertation effectively combined the disciplines of law and psychology. She received clinical experience at St. Elizabeths Hospital and has testified as an expert witness in psychology at the request of attorneys familiar with her background. She thus has successfully undertaken a new career.

The hearing committee was troubled, nonetheless, by petitioner's "confusion about the ethical implications of her criminal acts." [11] As she had done from the time she filed her motion to withdraw her guilty plea, petitioner persisted in asserting her innocence of any wrongdoing.[12] Nor, seem-

---

**5.** Petitioner served approximately nine months in a federal reformatory, from April 1973 to January 1974.

**6.** Although the record fails to specify the exact amount involved, it is clear that petitioner and her codefendant defrauded their two victims of many thousands of dollars. In the disciplinary hearing which preceded her disbarment by this court, petitioner asserted that the total amount involved was less than $60,000. At her reinstatement hearing, however, she made reference to civil judgments awarded against her in favor of the two complaining witnesses in her criminal proceeding; those judgments, later discharged by petitioner in bankruptcy, totalled $105,000.

**7.** Petitioner's collateral attack on her conviction under 28 U.S.C. § 2255 (1970) was equally unsuccessful.

**8.** Rule XI, § 15(1), provides in pertinent part:
Upon the filing with the Court of a certified copy of the court record (e. g., docket entry showing verdict or finding) demonstrating that an attorney has been found guilty of a serious crime . . ., the Court shall enter an order immediately suspending the attorney, whether the finding resulted from a plea of

guilty or *nolo contendere* or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such finding.

**9.** Under D.C.App.R.XI, § 21(2), a person who has been disbarred may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment.

**10.** As best we can determine, she has not sought reinstatement elsewhere and her disbarment status continues unaltered in Maryland, Virginia, and the federal courts of this jurisdiction.

**11.** As the committee noted in its Findings of Fact, "[p]etitioner's initial reaction to questions whether she violated the canons was a flat denial. When pressed· or when specific Code provisions were related to specific acts, she relented somewhat, reluctantly acknowledging a 'moral' but not a 'legal' violation, 'some' responsibility, 'more of a social responsibility' and the like." (Transcript references omitted.)

**12.** The hearing committee which recommended her initial disbarment to the Board gave little

ingly, was she aware that she had violated any ethical constraints by virtue of her conduct. *See* note 11, *supra.* In fact, she testified that she had not read the Code of Professional Responsibility "in the last year or two, or maybe in the last four years." Consequently, the hearing committee recommended that petitioner be reinstated only after establishing that she had completed a course in legal ethics. The Disciplinary Board adopted the findings and recommendations of the hearing committee in their entirety. However, based upon the statute which specifically applies to petitioner's case, we rule otherwise.

## II

D.C.Code 1973, § 11–2503(a), provides:

When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, the court shall, pending final determination of an appeal from the conviction, suspend the member of the bar from practice. Upon reversal of the conviction the court may vacate or modify the suspension. If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and he shall thereafter cease to be a member. Upon the granting of a pardon to a member so convicted, the court may vacate or modify the order of disbarment.

"To be sure, the statute is mandatory in its terms." *In re Colson, supra,* 412 A.2d at 1164; *accord, Laughlin v. United States,* 154 U.S.App.D.C. 196, 199 n.3, 474 F.2d 444, 447 n.3 (1972), *cert. denied,* 412 U.S. 941, 93 S.Ct. 2784, 37 L.Ed.2d 402 (1973). The finality of petitioner's conviction, coupled with the Board's finding of moral turpitude,[13] compelled her disbarment under the clear language of the statute.[14] That she was convicted of a federal felony, rather than a local offense, is immaterial. *See, e. g., In re Hopfl,* 48 N.Y.2d 859, 400 N.E.2d 292, 424 N.Y.S.2d 350 (1979); *Muniz v. State,* 575 S.W.2d 408 (Tex.Civ.App.1978). Nor is the statutory provision any less operative by reason of her *Alford* plea. Although she thereby did not technically admit guilt, she nonetheless stood convicted of a felony. *In re Hopfl, supra.* [15] Moreover, under the statute, her disbarment is permanent. To repeat, § 11–2503(a) states in part:

If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar *and he shall thereafter cease to be a member.* [Emphasis added.]

---

credence to her declarations of innocence. In its report to The Disciplinary Board, that committee commented:

Respondent's [Kerr's] own descriptions of selected circumstances about the crime for which she was convicted tend to minimize her participation therein and her culpability. However, the description of respondent's activity in Count One of the indictment to which she entered a guilty plea sharply contrasts with her protestations of passivity and of no more than limited or nominal participation in criminal deeds.

Although willing to consider mitigating circumstances, if any existed, the committee properly refused to retry her criminal case.

**13.** The hearing committee which earlier had recommended petitioner's disbarment concluded that her conduct was clearly within the definition of misconduct prohibited by the Disciplinary Rules of the Code of Professional Responsibility, particularly DR 1–102(A)(3) and (4) which proscribe, respectively, "illegal con-

duct involving moral turpitude that adversely reflects on [one's] fitness to practice law" and "conduct involving dishonesty, fraud, deceit, or misrepresentation." The Board, in turn, had adopted those conclusions. We note also that the Court of Appeals of Maryland, in ordering petitioner's disbarment in the state in which she originally was admitted, found that her fraud conviction involved moral turpitude.

**14.** Although petitioner's disbarment by this court was not explicitly predicated upon § 11-2503(a), in her brief she presumes that implicitly we acted under the authority of the statute as well as under our inherent supervisory powers.

**15.** *Cf.* D.C.App.R.XI, § 15(3), which provides:

A certified copy of the court record of a guilty finding of an attorney for any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against him based thereon.

*See, e. g., MacKinnon v. Ferber,* 16 N.J.Super. 390, 395, 84 A.2d 647, 649 (1951) (statute which compels forfeiture of right to drive thereafter upon second conviction of drunken driving means permanent forfeiture "for such is the force of the word 'thereafter' ...." ) [16]

■ A similar statute in New York has been so construed.[17] Judiciary Law § 90, subd. 4, provides:

Any person being an attorney and counsellor-at-law, who shall be convicted of a felony, shall, upon such conviction, cease to be an attorney and counsellor-at-law, *or to be competent to practice law as such.*

Whenever any attorney and counsellor-at-law shall be convicted of a felony, there may be presented to the appellate division of the supreme court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be struck from the roll of attorneys.

In denying a petition for reinstatement following disbarment under that provision, the court in *In re Sugarman,* 64 App.Div.2d 166, 409 N.Y.S.2d 224 (1978), noted that the attorney involved had presented a persuasive case for considering his reinstatement. Nonetheless, said the court, the statute left it powerless to reinstate a convicted felon absent either the reversal of his conviction or a pardon. *Accord, In re Glucksman,* 57 App.Div.2d 205, 394 N.Y.S.2d 191 (1977) (in absence of either a reversal or pardon, attorney disbarred under the statute has no legal basis for seeking reinstatement); *People v. Buckles,* 167 Colo. 64, 453 P.2d 404 (1968) (en banc) (statute declaring that a person convicted of felony will be disqualified from practicing as an attorney precludes reinstatement). Similarly, our statute expressly provides for only one situation in which a disbarment order may be modified or vacated, namely, in the event of a pardon. We do not have the statutory authority to reinstate an attorney who has been convicted of an offense involving moral turpitude.

We reject the argument, advanced both in petitioner's brief and in the brief of Bar Counsel on behalf of the Board's recommendation (which recommendation, incidentally, was made prior to our decision in the *Colson* case), that the statute represents an unconstitutional infringement on the inherent authority of this court over attorney discipline. While D.C.Code 1973, § 11–2501, gives us authority over the admission of attorneys to the bar as well as over their censure, suspension, and expulsion, it is silent with respect to readmission or reinstatement. The only rational interpretation of the word "admission" in that statute is "original admission." Thus, our inherent authority in no way conflicts with our obligation under § 11–2503(a) to disbar permanently an attorney who has been convicted of an offense involving moral turpitude. The cases cited by petitioner (and by Bar Counsel) in support of their constitutional challenge are inapposite; they are all state cases in which the courts derived their authority from their respective state constitutions.

■ "The District of Columbia is constitutionally distinct from the States." *Palmore v. United States,* 411 U.S. 389, 395, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973). This court and the Superior Court of the District of Columbia were created pursuant to the plenary power of Congress to legislate for the District of Columbia as provided in Art. I, § 8, cl. 17 of the Constitution. Accordingly, in this unique jurisdiction, unlike the states, Congress has the constitutional authority to "vest and distribute the judicial authority in and among courts and magistrates, and [to] regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the constitution of the United States." *Palmore, supra,* at 397, 93 S.Ct. at 1676, 36

---

**16.** *Cf.* Webster's definition of "thereafter" as "after that: from then on." Webster's Third New International Dictionary (1976 ed.).

**17.** We noted the similarity between the New York statute and our own in *Colson, supra,* 412 A.2d at 1165 n.8.

L.Ed.2d 342, quoting from *Capital Traction Co. v. Hof*, 174 U.S. 1, 5, 19 S.Ct. 580, 582, 43 L.Ed. 873 (1899). When exercising this Article I authority, Congress is not constrained by the separation of powers considerations which operate within the states. Consequently § 11–2503(a) is constitutional, as we implicitly recognized when we applied it in *Colson.*

■ Concluding as we do that the statute makes disbarment for conviction of an offense involving moral turpitude both mandatory and permanent in all cases in which a pardon has not been granted, petitioner's application for reinstatement to the bar of this court is denied.[18]

*So Ordered.*

GALLAGHER, Associate Judge, concurring:

Though it may appear the statute is unnecessarily rigid, the fact remains that this is properly a legislative concern and not one for the court. Because of the way the statute is now drawn, I see no course but to reach the result we do.

18. While our decision turns on the mandatory effect of the statute, we note also that permanent disbarment is not an unduly harsh form of discipline in any event for an attorney whose felony conviction directly related to a client's funds, *see The Florida Bar v. Mattingly*, 329 So.2d 9 (Fla.1976) (attorney so convicted permanently barred from reinstatement), and who "use[d] h[er] legal skills to defraud." *In re Raimondi and Dippel*, 285 Md. 607, 614, 403 A.2d 1234, 1237 (1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 705, 62 L.Ed.2d 669 (1980) (petitions for reinstatement denied, the court being "unwilling to once again constitute them officers of this Court, thereby placing them in a position where they may handle the affairs of others." *Id.*, at 620, 403 A.2d at 1241). As the United States District Court for the District of Columbia has stated:

The Court feels that when one of its officers charged with the "privileged administration of a public trust" violates that trust, violates his professional and other responsibilities, and commits a felony involving a client's funds, he conclusively and finally destroys the bond of confidence which must exist between a court and himself. The Court does not believe that it could ever repose in the

FERREN, Associate Judge, dissenting:

I begin from the premise that, conceptually, disbarment and reinstatement pose separate questions. Disbarment, as such, speaks solely to one's exit from the profession; it does not, in itself, preclude reinstatement, either absolutely or presumptively. Put another way, reinstatement "is not a continuation of the prior [disbarment] proceeding"; it "is a new proceeding for admission to the bar." *In re Keenan*, 310 Mass. 166, 168, 37 N.E.2d 516, 519 (1941).

This jurisdiction has recognized the inherent separateness of disbarment and reinstatement for over 70 years. *See In re Adriaans*, 33 App.D.C. 203 (1909) (reinstatement nine years after disbarment); *accord, Ex Parte Peters*, 195 Ala. 67, 70 So. 648 (1916); *In re Lavine*, 2 Cal.2d 324, 41 P.2d 161 (1935); *Cantor v. Grievance Committees*, 189 Tenn. 536, 226 S.W.2d 283 (1949).

This is not to say disbarment has no bearing on one's prospects for reinstatement. It obviously does. The point, rather, is that the implication of the one for the other in individual cases (or in categories of cases) is a matter of statute, rule, and/or court decision.[1] The nexus must be affirmatively established.

respondent the confidence which the Court must feel in its officers if the Court is to function honorably, efficiently and effectively. If an attorney's honesty has been successfully impugned, the Court feels that he should no longer be permitted to practice before it. [*In re Williams*, 158 F.Supp. 279, 281 (D.D.C.1957) (three-judge court), *aff'd*, 103 U.S.App.D.C. 174, 256 F.2d 888 (1958).]

1. *Compare Levenson v. Mills*, 294 F.2d 397, 399 (1st Cir. 1961), *cert. denied*, 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962) ("although the [disbarment] order is permanent in form it . . . does not necessarily prevent the appellant from reinstatement"); *In re Spriggs*, 90 Ariz. 387, 388, 368 P.2d 456, 457 (1962) ("the law does not intend that disbarred members remain out of their profession indefinitely if the disbarred member has rehabilitated himself in society and has shown himself to be a person of good moral character"); *Florida Bar v. Whiting*, 157 So.2d 690 (Fla.1963) (unqualified judgment of disbarment does not preclude an attorney from ever seeking reinstatement); *In re Hiss*, 368 Mass. 447, 333 N.E.2d 429, 434 (1975) ("Disbarment is not a permanent punishment imposed on delinquent attorneys as a supplement to the

The question, then, is whether Congress not only mandated disbarment for conviction of an offense involving moral turpitude, *In re Colson*, D.C.App., 412 A.2d 1160 (1979), but, as an added sanction, precluded reinstatement. In considering the congressional intent, we have only the present statute, D.C.Code 1973, § 11–2503(a), and its immediate predecessor, D.C.Code 1967, § 11–2103. These acts in relevant part provide as follows:[2]

### Section 11–2103

When a member of the bar of the United States District Court for the District of Columbia [which had exclusive disciplinary jurisdiction over attorneys prior to court reorganization] is convicted of an offense involving moral turpitude, ... the name of the member so convicted *may* thereupon, by order of the court, be struck from the role of the members of the bar, and he *shall thereafter* cease to be a member thereof. Upon appeal from a judgment of conviction, and pending the final determination of the appeal, the court may order the suspension from practice of the convicted member of the bar; and *upon a reversal of the conviction, or the granting of a pardon*, the court may vacate or modify the order of disbarment or suspension. [Emphasis added.]

### Section 11–2503(a)

When a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, the court shall, pending final determination of an appeal from the conviction, suspend the member of the bar from practice. *Upon reversal of the conviction* the court may vacate or modify the suspension. If a final judgment of conviction [of an offense involving moral turpitude] is certified to the court, the name of the member of the bar so convicted *shall* be struck from the roll of the members of the bar and he *shall thereafter* cease to be a member. *Upon the granting of a pardon* to a member so convicted, the court may vacate or modify the order of disbarment. [Emphasis added.]

A majority of this court holds that § 11–2503(a) precludes reinstatement, stressing that (1) the words "shall thereafter cease to be a member" implies permanence, and that (2) the last sentence of § 11–2503(a), authorizing the court to "vacate or modify the order of disbarment" in the event of a "pardon," implies there is only this one exception to permanent disbarment. Although this reasoning has force, I believe there is greater strength in the view that § 11–2503(a) does not generally bar reinstatement.

As I read the two statutes, the only relevant substantive change is from permissive ("may") to mandatory ("shall") disbarment

---

sanctions of the criminal law.... Such a harsh, unforgiving position is foreign to our system of reasonable, merciful justice.") *with People v. Buckles*, 167 Colo. 64, 453 P.2d 404, 405 (1968) (en banc) (statute mandating disbarment for felony conviction also precludes reinstatement); *In re Sugarman*, 64 App.Div.2d 166, 409 N.Y.S.2d 224 (1978) (same).

The rules of the United States District Court for the District of Columbia provide that an attorney convicted of a felony "shall cease to be a member of the bar of this court" and his or her name "shall be struck from the roll of members of the bar"; however, the attorney may apply for reinstatement upon "the expiration of at least five years from the effective date of the disbarment." D.C.D.C.R.4–3(I)(a), 4 3(VII)(b). The District Court did not have this rule as of July 29, 1970, when Congress enacted the legislation transferring the authority to admit and discipline attorneys from that court to the District of Columbia Court of Appeals. *See* note 2 *infra*.

2. Section 199 of the District of Columbia Court Reorganization Act of 1970 (the Act), Pub. L.No. 91 358, 84 Stat. 521, provided in part that the effective date generally would be the first day of the seventh calendar month which begins after the date of enactment, July 29, 1970, resulting in a February 1, 1971 effective date. Section 199, however, specifically deferred the provisions relating to attorneys (including § 11 2503(a)) until April 1, 1972, except that it deemed § 11 2103 amended as of February 1, 1971 with the new language of § 11 2503(a). In effect, therefore, § 11 2503(a) became the law as of February 1, 1971, although citable as § 11 2103 until April 1, 1972.

upon conviction of an offense involving moral turpitude.[3] This shift in itself says nothing about whether disbarment must be permanent. Thus, for the majority to be correct, it must be prepared to say that even permissive disbarment under D.C.Code 1967, § 11–2103 had to be permanent (absent reversal of the conviction or a pardon), since the relevant language ("shall thereafter," etc.) under both statutes is the same. Were my colleagues then to reply "Yes; disbarment had to be permanent under § 11–2103," I would find that answer unpersuasive.

To me, the words "shall thereafter cease to be a member" connote indefiniteness—open endedness—not permanence. The word "thereafter" is a relatively weak word meaning "after that"; it does not necessarily mean "forever." Common sense reinforces this reading of the statute: it would be anomalous for Congress to say (as it did) that disbarment for an offense involving moral turpitude was merely permissive—could be imposed or not—under § 11–2103, and yet, if invoked, had to be permanent. Although conceptually possible, this position is hardly plausible, for it would be inconsistent with the very flexibility intended by the permissive nature of the disbarment sanction itself. I cannot bring myself to believe that Congress, in adopting § 11–2103, intended such a wide gulf between suspension and disbarment.

Nor do I believe that permanence is implied by the language in § 11–2103 expressly authorizing this court to "*vacate or modify* the order of disbarment or suspension" upon "a reversal of the conviction, or the granting of a pardon." (Emphasis added.) The majority's conclusion that such language provides the exclusive basis for resumption of practice overlooks and confuses the inherent separateness of disbarment and reinstatement. Vacation or modification of an order of disbarment is not legally

equivalent to an order of reinstatement. Rather, such an action is, in effect, a ruling that the original order of disbarment is void from the beginning and therefore must be erased or supplanted. That ruling does not represent a conclusion that an individual had violated a disciplinary rule but now is rehabilitated, which is the relevant concern when reinstatement is at issue. *See* D.C. App.R.XI, § 21(5). By interpreting the statute to mean that authority to "vacate or modify" provides the only avenue to "reinstatement," the majority strains to make these concepts congruent when they more properly should be said to exist side-by-side.

Even if vacation or modification of disbarment could be deemed a legal, as well as functional, equivalent of reinstatement, each would comprise only a subset of this broader concept of reinstatement. Pardon and reversal of a conviction are such obvious, categorical bases for restoration of an attorney disbarred for a crime that the disbarment provision itself would appear unfair on its face (or at least to have a material omission in drafting) if these avenues of relief were not expressly recognized.[4] Accordingly, I would not inflate the "vacation" or "modification" concepts to fill the entire space occupied by "reinstatement" in order to achieve the severest possible interpretation.

In short, I am not persuaded that Congress, in adopting § 11–2103, intended a double sanction: if disbarment, then permanent disbarment.

If I am correct, then there is no basis for holding that the successor statute applicable here, § 11–2503(a), requires permanent disbarment. The only change in language from § 11–2103 to § 11–2503(a) related to disbarment (from permissive to mandatory) not to reinstatement. Because the authority to "vacate or modify" the disbarment order in the event of a pardon is conceptu-

---

3. In addition, § 11–2503(a) mandates suspension (but only suspension) until there has been a "final judgment of conviction" warranting disbarment, whereas § 11–2103 permitted disbarment pending appeal.

4. If a statute providing for disbarment solely on the basis of a certificate of conviction for a crime (in contrast with the underlying facts) did not permit resumption of practice after reversal of the conviction or a pardon, due process might well require it.

ally distinct from, or at least narrower than, the authority to grant reinstatement, I perceive no basis for saying that § 11–2503(a) retained,· let alone added, a reinstatement bar.[5]

Even if the foregoing discussion is not conclusive, it does suffice, I trust, to demonstrate at least that the statutory language is ambiguous as to reinstatement, not a clear mandate for permanent disbarment. Under these circumstances, given the serious deprivation of the right to earn a particular livelihood caused by disbarment, and ·given the substantial precedent for reinstatement, upon rehabilitation, after a period of disbarment, *see* note 1 *supra*, I would resolve the ambiguity in § 11–2503(a) by drawing upon the rule of lenity applicable to criminal cases: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Again, by analogy: "[w]hen choice has to be made

between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). *Accord, Whalen v. United States*, 445 U.S. 684, 695 n.10, 100 S.Ct. 1432, 1440 n.10, 63 L.Ed.2d 715 (1980); *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1977); *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). Indeed, the analogy is appropriate not merely because the deprivation is so severe but, more significantly, because disbarment under § 11–2503(a) is tied directly to the criminal conviction, as an inevitable consequence.[6]

In summary, the majority has reached unnecessarily—and unwisely—for a result not dictated by statute.[7] Whereas § 11–2503(a) is clear as to mandatory disbarment ("shall"), it can be said with assurance only that the statute makes disbarment indefi-

5. I have read the majority opinion several times. Each occasion has reinforced my impression that its only underpinning is the mandatory disbarment feature of § 11 2503(a). The opinion is premised on the fallacious assumption that this automatic sanction somehow forces the court to take a second, though logically separate, step to make the sanction even more severe: permanent disbarment. By not treating § 11 2103 and § 11 2503(a) sequentially (indeed, by not treating § 11 -2103 at all), my colleagues have slid over the significant sameness of the two statutes on the distinct, reinstatement issue.

6. This relationship between the conviction and disbarment is of special concern because of the complexity, on occasion, of determining whether the crime does or does not involve moral turpitude. While some crimes, as such, inherently involve moral turpitude, we have recognized in *Colson, supra*, 412 A.2d at 1164–65 & n.10, 1167; *id.* at 1183 & n.8 (Ferren, J., concurring), that in other cases the question of moral turpitude will turn on the facts, not simply on the nature of the charge. I am therefore concerned that, by virtue of this court's declining to use lenity to resolve any ambiguity, the Board on Professional Responsibility and, ultimately, this court will confront the added burden of trying to prevent the severity of permanent disbarment from influencing the determination as to moral turpitude.

7. The result here will cause additional problems under the disciplinary rules. For example, the rules permit the Board and this court to impose reciprocal discipline based on disbarment in another jurisdiction, including disbarment attributable to a criminal conviction. D.C.App.R.XI, § 18. This is obviously more efficient than conducting a *de novo* inquiry in this jurisdiction. Because this court now holds that § 11 2503(a), if applicable, makes disbarment permanent, an attorney confronted by reciprocal disbarment proceedings will not necessarily have a way to resolve the moral turpitude question until he or she applies for reinstatement no earlier than five years later. D.C. App.R.XI, § 21. (For the sake of argument here I assume that the reciprocal disbarment, essentially, was for the underlying criminal offense, not on some other basis that would avoid the § 11 2503(a) issue.) This court, therefore, in fairness ought to resolve whether reciprocal disbarment based on a criminal conviction can implicate § 11 -2503(a); then, if we conclude that it does, we should amend the disciplinary rules to assure any attorney facing such reciprocal disbarment that he or she may, instead, precipitate a *de novo* inquiry to resolve the moral turpitude issue up front, rather than years later at a reinstatement proceeding, when evidence may have been lost and memories faded.

nite ("thereafter"), not permanent. Accordingly, it is up to the court by way of disciplinary rules to decide whether reinstatement shall be permitted and, if so, under what terms. *See* D.C.Code 1973, §§ 11–2501, –2502. We have done so. D.C. App.R.XI § 21(2), (5). I therefore would resolve Ms. Kerr's petition for reinstatement on its merits. From the court's judgment to the contrary, I respectfully dissent.