**In re Leonard W. KROUNER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals Bar (Bar Registration No. 190165).**

No. 04–BG–431.

District of Columbia Court of Appeals.

Submitted Jan. 25, 2007.
Decided April 12, 2007.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

In this disciplinary proceeding against respondent Leonard W. Krouner, a member of the Bar of the District of Columbia, the Board of Professional Responsibility ("Board") has recommended to this court that: (1) respondent be disbarred based upon his conviction of crimes of moral turpitude *per se*, and (2) the disbarment be deemed to commence for purposes of reinstatement *nunc pro tunc* to May 23, 2003. We adopt the Board's recommendation that respondent be disbarred from the District of Columbia and order that the disbarment commence *nunc pro tunc* to May 23, 2003.[1]

**I.**

On February 20, 2003, respondent entered a plea of guilty to three felonies in the New York State Supreme Court Appellate Division, Third Judicial Department ("NYSAD"), in Albany County, New York. The convictions were for one count of insurance fraud in the third degree, in violation of the Penal Law of the State of New York ("Penal Law") § 176.20; one

---

1. Although Respondent did not properly file an affidavit in compliance with D.C. Bar R. XI, § 14(g) until May 18, 2004, we adopt the Board's position that Respondent's late filing should not preclude *nunc pro tunc* treatment of the disbarment date to May 23, 2003, the date on which Respondent made a good-faith attempt to notify the District of Columbia of his New York disbarment. In recognizing Respondent's good-faith effort to comport with the notice requirement of D.C. Bar R. XI, § 14(g), we note that (1) he was incarcerated immediately after his conviction and relied in good faith on his New York attorney to notify the D.C. Bar of his conviction, (2) the notification was delayed due to the attorney's unfamiliarity with the D.C. Bar's notification process, through no fault of Respondent, and

(3) no harm resulted from this notification mishap because Respondent did not practice law in the District of Columbia during this time. Thus, we see no reason to depart from the Board's recommendation that Respondent's disbarment be given *nunc pro tunc* treatment to May 23, 2003. Although this court previously denied *nunc pro tunc* treatment in our order of September 15, 2004, the Board argues, and we agree, that this order denied Respondent's motion on procedural grounds because the relief requested was premature, rather than on the merits. (Bd. Rpt. 9–12). Accordingly, we hold that disbarment be deemed to commence for purposes of reinstatement *nunc pro tunc* to May 23, 2003. (Bd. Rpt. at 9).

count of grand larceny in the fourth degree, in violation of Penal Law § 155.30(1); and one count of workers' compensation fraudulent practices, in violation of Workers' Compensation Law of the State of New York § 144(1). Respondent's convictions stemmed from falsely reporting his level of professional functioning in order to obtain increased disability benefits from his private insurance coverage. On May 12, 2003, Respondent was sentenced by the New York court to six months of imprisonment and five years of probation.

On May 23, 2003, the NYSAD formally disbarred respondent based upon his criminal convictions.[2] Bar Counsel reported New York's disciplinary action to this court, and on May 18, 2004, this court entered an order temporarily suspending respondent pursuant to D.C. Bar R. XI, § 11(d) and directing the Board either to recommend reciprocal discipline or proceed *de novo*. On September 28, 2005, the Board, proceeding *de novo*, issued its Report and Recommendation recommending that: (1) respondent be disbarred under D.C.Code § 11–2503(a) (2001), which requires disbarment "when a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude"; and (2) the disbarment be deemed to commence for purposes of reinstatement *nunc pro tunc* to May 23, 2003. Respondent filed an exception to these recommendations, challenging the constitutionality of § 11–2503(a), the applicability of this statute to his particular case, and the Board's finding of moral turpitude *per se*.

## II.

■ We review the Board's recommendation in accordance with D.C. Bar R. XI, § 9(g) (1998), which requires this court to adopt the recommended discipline of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted. *In re Marshall*, 762 A.2d 530, 536 (D.C.2000). "We review de novo any Board determination of moral turpitude, since 'the ultimate issue of moral turpitude is one of law rather than of fact.'" *In re Sneed*, 673 A.2d 591, 593 (D.C.1996) (internal citation omitted).

## III.

■ Respondent's first contention, that D.C.Code § 11–2503(a) violates the doctrine of separation of powers under Articles I and III of the United States Constitution, was specifically rejected by this court in *In re Kerr*, 424 A.2d 94, 98–99 (D.C.1980). *In re Kerr* held that D.C.Code § 11–2503(a) is constitutional because "Congress is not constrained by ... separation of powers considerations" when it creates courts "pursuant to the plenary power ... to legislate for the District of Columbia as provided in Art. I, § 8, cl. 17 of the Constitution," under which this court and the Superior Court of the District of Columbia were established. *In re Kerr, supra*, 424 A.2d at 98–99. Accordingly, D.C.Code § 11–2503(a) is constitutional and respondent's first contention is without merit.

■ Respondent's second contention, that the Americans with Disabilities Act proscribes his automatic disbarment for crimes of moral turpitude *per se*, has also been rejected by this court. In *In re Marshall, supra*, we held that the ADA's

---

2. According to the New York court's disbarment order, Respondent was automatically disbarred when he pled guilty to a felony. The order for disbarment is "a formality which merely confirms respondent's disbarred status." *In re Krouner*, 305 A.D.2d 932, 932, 759 N.Y.S.2d 402 (2003).

requirement of reasonable accommodation for employee disabilities does not shield an attorney from disbarment when he commits a criminal act, not withstanding that a disability may have been an underlying factor in causing the criminal act. 762 A.2d 530 at 540. Our reasoning in *In re Marshall* applies here, where respondent was convicted of crimes of moral turpitude allegedly attributable to his disability.[3] Consequently, the ADA does not shield respondent from disbarment.

 Respondent further argues that the automatic disbarment provision of D.C.Code § 11–2503(a), as interpreted in *In re Colson*, 412 A.2d 1160 (D.C.1979), is unconstitutional in that it fails to provide due process protections. We recognize the fact that an attorney is guaranteed the right to notice of disbarment proceedings and the right to be heard before the Board, and this court, on the issue of moral turpitude. *Colson, supra*, 412 A.2d at 1164. These procedural safeguards were granted to respondent, who has pre-sented his position before the Board, and this court, that his crimes did not involve moral turpitude.[4] Once the Board determines that an attorney has been convicted of a crime of moral turpitude *per se*, however, the attorney has no right to a mitigation hearing under D.C.Code § 11–2503(a).[5] This court has consistently upheld the constitutionality of these procedures, and we therefore reject respondent's due process argument. *See In re Sharp*, 674 A.2d 899, 900 (D.C.1996) (holding that the procedures for determining moral turpitude under D.C.Code § 11–2503(a) satisfy due process requirements and that automatic disbarment under this section does not violate substantive due process); *Colson, supra*, 412 A.2d at 1165 n. 8 ("[A] respondent's constitutional guarantee of due process is safeguarded, [when a mitigation hearing is obviated], not only by the hearing necessary to verify his conviction but also by his right to a jury trial and appellate review of the criminal conviction itself.").[6]

---

**3.** We have no record referring to the precise nature of Respondent's claimed disability. Respondent requested that he be allowed to file, under seal, certain documents related to his disability. However, the motion was denied.

**4.** Respondent has submitted a series of motions before the Board, and this court, addressing, *inter alia*, the issue of moral turpitude.

**5.** *Colson, supra*, 412 A.2d at 1164, explained this procedure as follows:

An attorney is subject to disbarment under the statute for his *conviction of a crime* involving moral turpitude, not for his *commission of an act* involving moral turpitude. The threshold focus of the statute, then, is on the *type* of crime committed rather than on the factual context surrounding the actual commission of the offense. The Board, therefore, must make an initial determination as to whether the attorney's crime inherently involves moral turpitude. If The Board decides that it does, that is the end of

the inquiry; The Board must recommend disbarment. (Emphasis in original).

**6.** Respondent's reliance on *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) in support of his argument that the automatic disbarment provision of D.C.Code § 11–2503(a) violates due process, is misplaced. First, *Booker* is limited to the context of criminal-sentencing proceedings, and is therefore not applicable to Bar disciplinary proceedings, which this court has distinguished from criminal proceedings. *See Sharp, supra*, 674 A.2d at 900 (holding that the constitutional proscription against double jeopardy, which applies only in criminal proceedings, is not applicable to disbarment proceedings because " '[t]he traditional view of Anglo–American jurisprudence [is] that disbarment is intended not as punishment, but as protection to the public' ") (internal citation omitted). Second, *Booker's* holding was premised entirely upon the Sixth Amendment right to a jury trial, not the Due Process Clause of the Fifth Amendment. *Booker, supra*, 543 U.S. at 226, 244, 125 S.Ct. 738.

■ Alternatively, respondent claims that he is personally entitled to a mitigation hearing because he has not validly waived his right to such an evidentiary hearing. Respondent argues that he was not informed of this potential consequence of a felony conviction at the time of his guilty plea, and therefore he could not have knowingly waived his right to a mitigation hearing in District of Columbia disbarment proceedings. Because District of Columbia case law put respondent on clear notice that conviction for crimes of moral turpitude *per se* results in automatic disbarment, *e.g., In re Squillacote*, 790 A.2d 514 (D.C.2002); *In re Hopmayer*, 625 A.2d 290 (D.C.1993); *Colson, supra*, 412 A.2d 1160, he cannot claim ignorance of the potential consequences of his conviction. *See In re Richardson*, 692 A.2d 427, 434–35 (D.C.1997) (holding that an attorney's voluntary resignation from the Florida Bar during disciplinary proceedings was a valid waiver of a mitigation hearing in D.C. Bar disciplinary proceedings because District of Columbia case law put the attorney on adequate notice of the consequences of his Florida Bar resignation). Accordingly, respondent's guilty plea to three felonies— all of which involved a specific intent to defraud and therefore constitute crimes of moral turpitude *per se* according to the Board's Report and Recommendation— validly waived respondent's right to a mitigation hearing.

■ We further conclude that the definition of a crime involving moral turpitude *per se* was satisfied in this case by respondent's conviction for three felonies of theft and fraud. Because we have never previously considered the specific statutes under which respondent pleaded guilty, the Board compared the specific elements of each of respondent's felony convictions to crimes that this court has determined to involve moral turpitude. We have consistently held that felonies involving intentional theft or fraud involve moral turpitude. *See, e.g., In re Caplan*, 691 A.2d 1152, 1152 (D.C.1997) ("Criminal offenses involving theft and fraud inherently involve moral turpitude."); *see also In re Firestone*, 824 A.2d 47 (D.C.2003) (mail fraud); *In re Kelly*, 816 A.2d 52 (D.C.2003) (bank fraud); *In re Patterson*, 833 A.2d 493 (D.C.2003) (theft); *In re McCoole*, 791 A.2d 910 (D.C.2002) (second degree grand larceny); *In re Sluys*, 632 A.2d 734 (D.C. 1993) (grand larceny). The Board found that all three of respondent's felony convictions required proof of a knowing act and a specific intent to defraud. Comparing these offenses to this court's precedent, the Board concluded that respondent was convicted for crimes involving moral turpitude *per se*. We agree with the Board's analysis and are satisfied that respondent's felony convictions for insurance fraud, grand larceny, and workers' compensation fraud, all of which require the element of intentional theft or a specific intent to defraud, are crimes of moral turpitude *per se*.

We therefore adopt the Board's recommendation that respondent be disbarred from the District of Columbia as of May 23, 2003, the date of his good-faith attempt to comply with D.C. Bar R. XI, § 14(g).[7] Accordingly, it is

ORDERED that Leonard W. Krouner is hereby disbarred from the District of Columbia as of May 23, 2003.

---

7. In light of our decision to disbar respondent based wholly upon § 11.2503(a), there is no need to address respondent's claims concerning the due process implications of reciprocal discipline.